### UNITED STATES *v.* CLAFLIN.

1. An action of debt cannot be maintained by the United States to recover the penalties prescribed by the fourth section of the act of Congress approved July 18, 1866 (14 Stat. 179), entitled "An Act to prevent smuggling, and for other purposes." That act contemplated a criminal proceeding and not a civil remedy.
2. Nor does sect. 3082 of the Revised Statutes authorize a civil action.
3. A recital in a statute, that a former statute was repealed or superseded by subsequent acts, is not conclusive as to such repeal or supersedure. Whether a statute was so repealed is a judicial, not a legislative question.
4. A statute covering the whole subject-matter of a former one, adding offences and varying the procedure, operates not cumulatively, but by way of substitution, and, therefore, impliedly repeals it. In the absence of any repealing clause, it is, however, necessary to the implication of a repeal that the objects of the two statutes are the same. If they are not, both statutes will stand, though they refer to the same subject.
5. The second section of the act of Congress of March 3, 1823 (3 Stat. 781), entitled "An Act to amend an act entitled 'An Act further to regulate the entry of merchandise imported into the United States from any adjacent territory,'" was supplied by the fourth section of the act of July 18, 1866 (*supra*), and thereby repealed. *Stockwell* v. *United States* (13 Wall. 531) reviewed.

ERROR to the Circuit Court of the United States for the Southern District of New York.

The facts are stated in the opinion of the court.

*The Attorney-General* and *The Solicitor-General* for the United States.

*Mr. Joseph H. Choate, contra.*

MR. JUSTICE STRONG delivered the opinion of the court.

This was an action of debt brought by the United States to recover the amounts of several forfeitures or liabilities alleged to have been incurred by the defendants in consequence of their having received, concealed, and bought goods, wares, and merchandise illegally imported, knowing them to have been illegally imported and liable to seizure. The declaration contains thirty counts. Of these, the first and every alternate odd-numbered one is founded on the act of Congress of March 3, 1823. 3 Stat. 781, c. 58, sect. 2. They charge illegal importations at different times between Dec. 1, 1871, and Sept. 1,

1873, inclusive; also receipts, concealments, or purchases of the goods by the defendants between the first-mentioned date and Sept. 2, 1873, inclusive, with knowledge that the goods had been illegally imported. All the other counts, those even-numbered, are founded upon the fourth section of the act of July 18, 1866. 14 id. 179, c. 201, sect. 4. The importations, receipts, concealments, or purchases charged in these counts are averred to have taken place at the times designated in the odd-numbered counts.

To the entire declaration the defendants interposed a general demurrer, upon which the Circuit Court gave judgment in their favor. Whether this judgment was correct is the underlying question we have now to consider. That the counts framed under sect. 4 of the act of 1866 cannot be sustained is too clear for debate, and the government very properly has abandoned them as unsustainable. That act contemplated a criminal proceeding, and not a civil action of debt. It imposed a penalty for receiving, concealing, buying, selling, or in any manner facilitating the transportation, concealment, or sale of goods illegally imported. The penalty was a fine on conviction, not exceeding $5,000 nor less than $50, or imprisonment, or both, at the discretion of the court. It is obvious, therefore, that its provisions cannot be enforced by any civil action, certainly not in an action of debt.

The single question left, then, is whether the counts founded on the act of 1823 are sustainable. The second section of that act was as follows: —

"That if any person or persons shall receive, conceal, or buy any goods, wares, or merchandise, knowing them to have been illegally imported into the United States, and liable to seizure by virtue of any act in relation to the revenues, such person or persons shall, on conviction thereof, forfeit and pay a sum double the amount or value of the goods, wares, or merchandise so received, concealed, or purchased."

If this section was in force in 1871, 1872, and 1873, when the illegal importations alleged in this case were made, it is not denied that the odd-numbered counts in the declaration have a sufficient basis on which to stand, and that the demurrer

should have been overruled. But the defendants contend that the section was repealed by the act of 1866, so far as it can affect transactions occurring after the passage of the later act; and such was the opinion of the Circuit Court. The act of 1866 did not expressly repeal the second section of the act of 1823. The forty-third section repealed several acts specified by it, some prior and others subsequent to the act of 1823, and concluded with the sweeping clause, " and all other acts and parts of acts conflicting with or supplied " by it. If, therefore, it worked a repeal of the said second section, it must be because it supplied the provisions of that section, or was in conflict with them. And such supply and repugnance must plainly appear. The Circuit Court placed some reliance — their principal reliance, indeed — upon the action of Congress when the Revised Statutes were enacted in 1874. Those statutes undoubtedly repealed the act of 1823, if it had not been repealed before. In sect. 5596 it was thus enacted :

" All acts of Congress passed prior to said first day of December, 1873, any portion of which is embraced in any section of said revision, are hereby repealed, and the section applicable thereto shall be in force in lieu thereof; all parts of such acts not contained in such revision having been repealed or superseded by subsequent acts, or not being general or permanent in their nature."

As a portion of the act of 1823 was carried into the Revised Statutes (see sect. 3099), and the second section was not, that section was covered by the repealing clause, unless it had been repealed before. But that clause indicates a belief on the part of Congress that it had been previously repealed, and, doubtless, that it was repealed by the act of 1866. The indication is found in the words that declare all parts of acts not contained in the revision, but other portions of which are, to have been repealed or superseded by subsequent acts. This, however, though entitled to great respect, ought not to be considered as more than an expression of opinion or a recital of belief. It is not in the form of an enactment. It is not a declaration of congressional will. It is not a rule for the future. It certainly is not conclusive that the second section was repealed or superseded by the act of 1866, or by any other act

prior to the enactment of the revision.   Whether a statute was repealed by a later one is a judicial, not a legislative question. And even a declaratory act, or an act directing how a former act shall be construed, is inoperative on the past, though controlling in future.   *Postmaster - General* v. *Early*, 12 Wheat. 136.

It is, therefore, still a question of judicial construction whether the second section of the act of 1823 was in fact repealed by the act of 1866, that is, whether it was in conflict with that later act or supplied by it; for, as we have said, the act of 1866, while repealing expressly certain prior acts particularly described (the act of 1823 not being one of them), repealed only such other acts or parts of acts as were in conflict with it or were supplied by it.

In *Stockwell* v. *United States* (13 Wall. 531), the question was before us.   That was an action of debt brought by the United States to recover double the value of certain importations alleged to have been illegally made, and received, concealed, or bought by the defendants, with knowledge that the goods had been illegally imported.   The action was founded on the second section of the act of March 3, 1823, as are the counts we are now considering.   The importations were made and the goods were received and sold before the passage of the act of 1866.   We held that the action would lie, and, as the jury found the defendants knew the goods had been illegally imported, that they had incurred the liabilities imposed by the second section of the act of 1823.   Hence we gave judgment in favor of the United States.   We are still of the opinion that the judgment was correct; for even if the act of 1823 was repealed by that of 1866, the liabilities incurred under it before its repeal were preserved, if not by the forty-fourth section of the repealing act, certainly by the act of Feb. 18, 1867, entitled "An Act supplementary to an act to prevent smuggling, and for other purposes," approved July 18, 1866.   The first section of that act enacted as follows : —

"That the provisions of the act of Congress approved July 18, 1866, entitled 'An Act to prevent smuggling, and for other purposes,' shall be so construed as not to affect any right of suit or

prosecution which may have accrued under any prior act of Congress repealed or supplied by said act previous to July 18, 1866; and all such suits or prosecutions as have been or shall be commenced under such prior acts for acts committed previous to July 18, 1866, shall be tried and disposed of, and judgment or decree executed, as if said act of July 18, 1866, had not been passed, any thing therein contained to the contrary notwithstanding."

As the offences charged in that case occurred before the act of 1866 was passed, they were within this declaratory act, and therefore the act of 1823 was enforceable against the offenders.

The act of 1867 was not called to our notice when the case of *Stockwell* v. *The United States* was before us. If it had been, it would have been unnecessary to consider at all whether the act of 1866 had repealed any former acts. But in the absence of any reference to it, we felt called upon to inquire whether the act of 1823 was repealed by the enactment of 1866; and we held that its second section was not, certainly not so as to affect that suit, brought to enforce liabilities incurred before the later act was passed. It is true that in reaching this conclusion we took broader ground. We argued that the second section of the act of 1823 and the fourth section of the act of 1866 were not in conflict with each other, and that the former was not supplied by the latter. We regarded the first as a remedial provision intended to secure compensation for interference with the rights of the United States, and for that purpose giving a civil remedy, while the second was, as we thought, strictly penal and not at all remedial. Our inference, therefore, was that the later act did not supply the provisions of the former, and should not be regarded as a substitute for them. A further consideration, however, and a more extended examination than we were then able to give the subject, have led us to doubt the correctness of the opinion we expressed when the case of Stockwell was before us, though not the correctness of our judgment in the case. The real question is, Was the act of 1866 intended by Congress to be a substitute for the second section of the act of 1823? When it was enacted, Congress had in view as well the offence described in the act

of·1823 as other offences against the revenue laws. It mentions *in ipsissimis verbis* the offence created by that act. Its provisions are also broader in their scope. It includes offences by importers. It adds to the offences described in the act of 1823, selling the illegally imported goods, and facilitating in any manner their transportation, concealment, or sale after their importation, knowing them to have been imported contrary to law; and for each of these offences, as well as for those described in the act of 1823, it imposes a forfeiture of the goods, and prescribes a fine on conviction not exceeding $5,000 nor less than $50, or imprisonment, or both, at the discretion of the court.

What, then, was its effect upon the prior statute? The principles of legal construction to be applied to such a case are well known. While repeals by implication are not favored, and while it is held that a statute is not repealed by a later one containing no repealing clause, unless the later statute is positively repugnant to the former, or is a plain substitute for it, supplying its provisions, it is still true that repeal or no repeal, substitution or no substitution, is a question of legislative intention, and there are acknowledged rules for ascertaining that intention.

In *Michell* v. *Brown* (1 El. & El. 267), it was ruled in the Court of Queen's Bench, that if a later statute again describes an offence created by a former statute, and affixes a different punishment to it, varying the procedure, &c., the later operates by way of substitution, not cumulatively, and the former statute is repealed. A similar rule was asserted by Baron Bramwell in *Ex parte Baker*, 2 H. & N. 219. So in *Barry* v. *The Croydon Gas Co.* (15 C. B. N. S. 568), an act imposing a penalty of £200 upon the undertaker of any gas-works for fouling any stream, &c., to be recovered by the person into whose water the foul substance should be conveyed, was held to repeal by implication a former act describing the same offence and imposing the same penalty, to be sued for by any common informer. The two penalties were held not to be cumulative. The principle of these rulings has been frequently recognized by courts in this country.

In *Norris* v. *Crocker et al.* (13 How. 429), it was said by

this court, " As a general rule, it is not open to controversy, that, where a new statute covers the whole subject-matter of an old one, adds offences, and prescribes different penalties for those enumerated in the old law, the former is repealed by implication, as the provisions of both cannot stand together." That was a case in most points much like the present. The older statute had imposed a penalty for certain offences, — namely, obstructing a claimant in arresting a fugitive from labor, rescuing the fugitive after his arrest, or harboring and concealing him with knowledge that he was a fugitive; and the statute had enacted that the claimant might recover the penalty for his own benefit, and also reserved to him a right of action in damages for the actual injuries he might have sustained, be they more or less. The later statute imposed a greater penalty, and added imprisonment for the same offences, gave no right to the claimant to recover the penalty, but gave him a right to recover by way of damages the sum of $1,000, for each fugitive lost by reason of the offences. This court held that the two statutes were in conflict, and consequently that the earlier was repealed.

It is, however, necessary to the implication of a repeal that the objects of the two statutes are the same, in the absence of any repealing clause. If they are not, both statutes will stand, though they may refer to the same subject. Maxwell on the Interpretation of Statutes, 153. This consideration had weight with us when *Stockwell* v. *The United States* was decided. We then regarded the act of 1823 not so much punitive as remedial. This seemed to us to be evinced by the fact that the amount recoverable under that act by the United States was made proportional to the value of the goods wrongfully concealed or bought, and not in the least proportional to the degree of criminality of the act of receipt, purchase, or concealment. Hence we regarded the claim for double the value of the goods concealed, received, or bought as only a claim for indemnity for abstracting goods forfeited for illegal importation. And we thought the object of the act of 1866 was only to punish the offence criminally. If this were truly the purpose of the acts, their objects would not have been the same, and, therefore, the second statute could not be regarded as repealing the

former.   But a renewed and more careful examination of the two statutes, aided as it has been by the argument of counsel, has convinced us that Congress, in the act of 1866, had in view not only punishment of the offence described, but indemnity to the government for loss sustained in consequence of the criminal conduct of those guilty of the offence.   The later act denounces a forfeiture of the goods concealed, &c., no matter in whose hands they may be found.   If the forfeiture of double the value of the goods denounced by the act of 1823 was designed to secure indemnity to the government for the wrong done, the forfeiture of the goods themselves, declared in the act of 1866, must have been intended for the same purpose, and the fine and imprisonment were superadded as a vindication of public justice.   If this is so, as we now think it is, the act of 1866 supplied the provisions of the second section of the act of 1823, and, consequently, would have repealed them had it contained no repealing clause.   But the forty-third section of the act of 1866 expressly repealed " all other acts and parts of acts conflicting with or supplied by it."   If the act of 1823 was not in conflict with the fourth section of the act of 1866, it was supplied by it, as we now think, and it was, therefore, repealed.

It follows that no suit can be maintained, by force of the act of 1823, for any acts done after the enactment of the act of 1866. The demurrer was, therefore, well sustained.

*Judgment affirmed.*

NOTE. — In *United States* v. *Claflin*, error to the Circuit Court of the United States for the Southern District of New York, which was argued at the same time and by the same counsel as was the preceding case, MR. JUSTICE STRONG, in delivering the opinion of the court, remarked : —

The declaration in this case, to which the defendants demurred generally, contained fourteen counts, the first and each alternate odd count of which rests upon the second section of the act of Congress of March 3, 1823, entitled " An Act to amend an act entitled ' An Act further to regulate the entry of merchandise imported into the United States from any adjacent territory.' " 3 Stat. 781. These counts all charge that the defendants, at various times between the fourteenth day of February, 1874, and the seventeenth day of November, 1874, inclusive, received, bought, and concealed goods, wares, and merchandise illegally imported into the United States, knowing the goods to have been illegally imported, and they assert the right of the United States to recover the double value of the goods.   That such a recovery cannot be had, because the second section of

the act of 1823 was repealed by the act of July 18, 1866, we have ruled in *United States* v. *Claflin* (*supra*, p. 546). So far as those counts extend, therefore, the demurrer to the declaration was properly sustained.

The counts 2, 4, 6, and 8 are based upon the fourth section of the act of 1866, which, as we have seen in the case mentioned, contemplated only a criminal proceeding, and not a civil suit, as this is. Those counts, therefore, have no foundation. The remaining counts, Nos. 10, 12, and 14, are based upon sect. 3082 of the Revised Statutes, which is but a re-enactment of the act of 1866. It was, therefore, correct that the Circuit Court sustained the demurrer to the entire declaration.

*Judgment affirmed.*