## THE ADULA.

(District Court, S. D. Georgia, E. D. December 30, 1903.)

1. PRIZE CASES—COMPENSATION OF DISTRICT ATTORNEY—CONSTRUCTION OF SALARY ACT.

Rev. St. §§ 4646, 4647 [U. S. Comp. St. 1901, p. 3138], relating to cases of prize, providing that the district attorney and prize commissioners shall be allowed just and suitable compensation for their services in each prize cause, to be determined by the court and paid as costs, and permitting the district attorney to retain "for his services in prize cases" a sum not exceeding $3,000 a year in addition to the maximum compensation allowed to be retained by him by law, or "in addition to any salary he may receive in lieu of such maximum compensation," were not repealed as to the district attorney by Act May 28, 1896, c. 252, 29 Stat. 179 [U.

S. Comp. St. 1901, p. 611], providing salaries for such officers, nor is he required by said act to cover the allowances so made him into the treasury. His services in prize causes are in the nature of special services rendered on behalf of both the government and the officers and men of the navy who are entitled to share in the proceeds of the capture, and the court may properly make him suitable allowance therefor for his services rendered either within or without his district.

Prize. On motion by United States for review of decree of July 17, 1901 (127 Fed. 849), allowing compensation to district attorney.

Alexander Akerman, Asst. U. S. Atty.

Marion Erwin, pro se.

SPEER, District Judge. Subsequently to the rendition of the decree for distribution in this case the United States entered the following motion:

"On this the 13th day of August, 1901, comes the United States of America, and moves the court to review its order and decree of July 17, 1901, made in the above-stated cause, approving the report of J. N. Talley, special master, in so far as said report awards the sum of twenty-eight hundred dollars to Marion Erwin, Esq., United States attorney, as compensation to be retained by him personally for services in said prize cause, and for grounds of the said motion movant shows: That said report of said special master and said order approving the same was erroneous, in this: that it was not competent for the court to allow said compensation to the said district attorney under sections 4646, 4647, Rev. St. [U. S. Comp. St. 1901, p. 3138], title 'Prize,' because said sections were repealed by the act of May 28, 1896, c. 252, 29 Stat. 179 [U. S. Comp. St. 1901, p. 611], and was not competent for the court to make such allowance for services rendered outside of the district, nor for services in representing the interests of the government and the captors in the defense of the libel for salvage. Wherefore movant prays that the said decree may be modified as to said allowance.

"Alexander Akerman, Assistant U. S. Attorney."

This motion obviously involves the construction of the relevant statutes in pari materia. The great value of the services of the district attorney in this singularly interesting prize cause is not questioned. The success of the United States in the cause is largely ascribable to his acumen, discretion, and research. It is not questioned that very extensive services were performed by that officer outside of the district to which he was appointed. They were in addition to the preparation and argument of the cause proper. All of these services were ratified by the attorney general. That they were essential to the interest of the government may be illustrated by the fact that in one matter alone a salvage claim against the prize ship, resulting from fire in the harbor of New York, was reduced from $15,000 to $1,000. This was to preserve more than one-fourth of the entire value in controversy. It is equally clear that, except in cases appealed to the Circuit Court of Appeals therefrom, the duties of district attorney extend only to the boundaries of his district. With regard to the duties of that officer, said Mr. Justice Brewer for the unanimous court in United States v. Winston, 170 U. S. 522, 18 Sup. Ct. 701, 42 L. Ed. 1130:

"He is the district attorney of the United States in the district. So far as locality is concerned, the boundaries of the district are the limits of his duty. Within these boundaries he is to discharge all his official duties. Beyond them he is not called to go."

With further reference to this topic, the learned justice said:

"The duties so performed are not performed by him as district attorney, but by virtue of the special designation and employment by the attorney general, and the compensation which he may receive is not a part of his compensation as district attorney or limited by the maximum prescribed therefor."

This case is cited for an authoritative expression as to the territorial limits to which the duty of the district attorney virtute officii extends. But the contention of the government has a broader scope. It would in prize cases deny to the United States attorneys any compensation whatever in addition to their salaries.

To maintain this case the government relies on the act of May 28, 1896, c. 252, 29 Stat. 179 [U. S. Comp. St. 1901, p. 611], known as the "Salary Act." This provides in section 7, that the United States district attorneys for each of the judicial districts of the United States "shall be paid in lieu of the salaries, fees, per centums and other compensations now allowed by law, an annual salary, as follows: [The salaries vary for the several districts.]" The act otherwise provides that all fees and emoluments authorized by law to be paid to United States district attorneys shall be charged as heretofore, and shall be collected as far as possible, and covered into the treasury of the United States.

The enactments which this statute was designed to repeal or modify constituted the fee or cost system for the compensation of United States attorneys and court officers as outlined by a number of sections of title 13 of the Revised Statutes [U. S. Comp. St. 1901, p. 315], relating to "The Judiciary." It is not essential to enumerate these sections, but they all relate to the routine and ordinary duties of these officers.

It is ever important in the consideration of the question now before the court to bear in mind that the mischief sought to be corrected by the act of May 28, 1896, supra, was supposed to have existed under the provisions of title 13, "The Judiciary," and related expressly to that title and to the costs and fees of court officers therein allowed. The compensation of the district attorney in prize cases is fixed in another part of the Revised Statutes, under another and distinct title, and is express legislation on the subject of captures in time of war. It also comprehends the rights of officers and persons in no sense connected with the "judiciary." The legislation itself was passed June 30, 1864, when the country was involved in war. It may well be regarded, then, as legislation intended to meet the exigencies of war. The amounts allowed for services thereby are to be paid, not from the public treasury, as in the case of ordinary compensation of court officers, but from the proceeds of prizes captured either from a belligerent enemy or from a neutral who may violate the laws of war. The proceeds of prize ships condemned and sold are to be paid into the treasury to a special account, in case of naval vessels, and the Treasury Department "shall credit the Navy Department with each amount received, to be distributed to vessels of the navy, and the persons entitled to share therein shall be severally credited in their accounts with the Navy Department with the amounts to which they are

respectively entitled." All the legislation upon this topic is in the comprehensive special law enacted on June 30, 1864. In this act are found the provisions upon which the district attorney relies to support the compensation which has already been allowed him by the court. Section 4646 provides: "The district attorney and prize commissioners, except the naval officer, shall be allowed a just and suitable compensation for their respective services in each prize cause, to be adjusted and determined by the court and to be paid as costs in the cause." Section 4647 allows the district attorney "for his services in prize cases" to retain a sum not exceeding $3,000 a year in addition to the maximum compensation allowed to be retained by him under the provisions of title 13, "The Judiciary," or in addition to any salary he may receive in lieu of such maximum compensation. Now, by the act of May 28, 1896, the district attorney has been given a salary in lieu of his maximum compensation. From this language, which Congress thought proper to adopt, it seems very clear that whatever changes in his compensation the future might have in store for the district attorney by amendments to title 13, "The Judiciary," he was expressly reserved an especial and additional right in prize causes. It would seem difficult to gather any other meaning from the plain and unambiguous terms of the statute. The general rule for the construction of acts of legislative bodies is that the words are to be read in their popular, natural, and ordinary sense, giving them a meaning to their full extent and capacity. Broom's Legal Maxims, 549. And again:

"If the words of the statute are in themselves precise and unambiguous, then no more can be necessary than to expound the words in their natural and ordinary sense. The words themselves do in such case best declare the intention of the lawgiver. But if any doubt arises from the terms employed by the legislature, it has always been held a safe means of collecting the intention to call in aid the ground and cause of making the statute." Id. 551.

The question then is, was this definite and express provision of our prize law for the compensation of counsel for the government for services of the utmost magnitude in time of war repealed by an enactment, general in its character, providing for his pay in the piping times of peace? Was it the intention of Congress that the attorney of the United States should receive no greater pay for the condemnation of a Cunarder when violating international law than for the conviction of a lard can distiller when violating the internal revenue laws?

It is to be observed, moreover, that in prize cases the services of the district attorney are not rendered solely for the benefit of the government. One-half of the values condemned in cases like that of the Adula become the property of the officers and seamen entitled under the prize law. Is it not fairly presumable that Congress had this in mind when allowing additional compensation for the district attorney in prize cases? Is it reasonable to conclude, in the absence of express legislative declaration to that intent, that it was the purpose of Congress to require one of its law officers to gratuitously devote his professional labors to maintain the personal claims of officers and enlisted men in another department? What seems an additional hard-

ship of this construction may be illustrated by the modus operandi by which it is sought in this case to cover into the treasury the allowance made the district attorney. No question is made as to the correctness in amount of the allowance made to the district attorney. It is, however, insisted that under the act of May 28, 1896, he should collect his allowance and pay it to the clerk, to be covered into the treasury. Now, under the general prize law as it existed at the time, the United States was entitled to one-half of the net proceeds of this prize, and, should the construction of the movants be adopted by the court, the government would receive this amount, and in addition thereto the sum of $2,800 allowed the district attorney. This would place the government in the attitude of not only denying to the district attorney his compensation in a case of the utmost national, and indeed international, interest, but, by virtue of a provision aimed at the ordinary fees and costs of court officers, of exacting from its officers and seamen a considerable sum to which, if the claim of the district attorney is not maintainable, they would be entitled as prize money.

But, after all, the contention must be determined on the question, has Congress repealed that express provision of the prize law allowing in prize cases extra compensation to the district attorney? In the salary act of May 28, 1896, there were no provisions or language expressly repealing sections 4646 and 4647, which authorize extra compensation to district attorneys in cases of prize. The government, therefore, is driven to rely upon a repeal by implication, or on the ground that the salary act is the later of two inconsistent laws. But said the Supreme Court in Osborn v. Nickolson, 13 Wall. 662, 20 L. Ed. 689: "The doctrines of the repeal of statutes and the destruction of vested rights by implication are alike unfavored in the law. Neither is to be admitted unless implication is so clear as to be equivalent to an explicit declaration. Every doubt should be resolved against a construction so fraught with mischiefs." There is, moreover, a great wealth of authority in support of the proposition that a former law is repealed by a later one only when harmony is impossible and when they cannot stand together. In such cases, said the Supreme Court of the United States in Chicago Railway Co. v. United States, 127 U. S. 409, 8 Sup. Ct. 1196, 32 L. Ed. 180: "The later act will operate as a repeal only where it plainly appears that it was intended as a substitute for the first act." Said Mr. Justice Story in Wood v. United States, 16 Pet. 362, 10 L. Ed. 342, "There must be positive repugnancy between the provisions of the new law and those of the old, and even then the old law is repealed by implication only pro tanto to the extent of the repugnancy." Besides, it is necessary to support the contention of repeal by implication that the object of the two statutes should be the same. The Supreme Court stated the rule as follows in United States v. Claflin, 97 U. S. 552, 24 L. Ed. 1082, 1085: "It is necessary to the implication of a repeal that the objects of the two statutes are the same in the absence of any repealing clause. If they are not, both statutes will stand, though they may refer to the same subject." Maxwell on the Interpretation of Statutes. In view of these principles it appears that there is nothing inharmonious between the compensation fixed for the ordinary duties of

the district attorney by the act of 1896 and the prize law fixing his compensation for extraordinary services resulting from a condition of war. Nor does it appear that the amendment to the title "The Judiciary" was a substitute for the relevant portion of the title "Prize," nor that the object of the two statutes is the same. It should properly be recalled that the act of 1896 was enacted when there was no shadow of war in the future. The salaries allowed the district attorneys, as appears from the records of Congress and the reports of the attorney general, were calculated in view of their earnings in the years immediately antecedent to the act. It is clearly evident that Congress did not have in mind the enormous responsibility and labor which might devolve upon those officers as a consequence of foreign war, but, as stated, the legislation under the title "Prize" was enacted when Congress had the fullest appreciation of war and of its strenuous demands upon the energies of every responsible officer of government.

It is said, however, that by the salary act of 1896 Congress undertook to settle, once for all, the questions relating to the compensation of court officers, and that this must be treated as a substitute for the provisions of the prize law, sections 4646 and 4647, on which the district attorney relies. The rule on this subject, as more than once approved by the Supreme Court of the United States, is enunciated by Chief Justice Waite in King v. Cornell, 106 U. S. 395, 396, 1 Sup. Ct. 312, 27 L. Ed. 60, as follows: "While repeals by implication are not favored, it is well settled that, where two acts are not in all respects repugnant, if the latter act covers the whole subject of the earlier, and embraces new provisions, which plainly show it was intended as a substitute for the first, it will operate as a repeal." See, also, Paquette Habana, 175 U. S. 678, 20 Sup. Ct. 290, 44 L. Ed. 320.

While this is true, it is also true that the salary act under the title "The Judiciary" does not, in our opinion, plainly show that it was intended to afford a substitute for the compensation allowed the district attorney along with other prize commissioners by the statutes under the title "Prize," which we have had under consideration. When contrasted with the ordinary duties of that officer, so different are the topics to which the law in prize cases relates, so consequential the services of the law officer of the government to the public, so grave and delicate the international questions which continually arise in prize cases, and so tremendous the responsibility upon the United States attorney, that it would seem to strain the constructive faculty to conclude that the sections of the act of 1864 relating to captures by our maritime forces in time of war have been wholly superseded and set aside by the act of 1896, fixing the ordinary compensation of court officers in time of peace. The salary act was passed as legislation on an appropriation bill. It is true that it purports to repeal conflicting laws, but whether a law has been repealed is a judicial, and not a legislative, question. It is not unimportant that an attentive examination of the debates on the salary bill, both in the Senate and in the House, will make it plain that no member of either house discussed or referred to in any manner the statutes under the title "Prize," or the compensation of court officers in prize cases. We conclude, therefore, that Congress neither expressly nor impliedly repealed sec-

tions 4646 and 4647, by virtue of which the district attorney has been adjudged entitled to the allowance made him.

If grounds were needed to support the allowance made the district attorney in this case, ample illustration of its propriety would be found in the record in re The Adula, in which his services were rendered, the eminence of counsel by whom he was opposed, the reiterated hearings in the District and Supreme Courts, and the grave, novel, and intricate considerations of international law, important questions of practice in prize cases, the large amount involved, and the tremendous and persistent efforts of the claimants to defeat the condemnation of what is believed to be the only prize displaying the flag of a neutral power captured by our navy and condemned by our courts during the Spanish-American War.

For these reasons the motion of the government is denied.