**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RAYMOND WATISON,
                    *Plaintiff-Appellant,*

v.

MARY CARTER; CRAIG MADIEROS;
DON HELLING; JOSEPH RODRIGUEZ;
SEAN LAGIER; DANILO SANTOS;
CHRISTINE CARMAZZI; ROSA
RODRIGUEZ; CANDICE NYA,
                    *Defendants-Appellees.*

No. 10-16778

D.C. No.
3:09-cv-00664-
ECR-RAM

OPINION

Appeal from the United States District Court
for the District of Nevada
Edward C. Reed, Senior District Judge, Presiding

Argued and Submitted
November 18, 2011—San Francisco, California

Filed February 13, 2012

Before: Jerome Farris, John T. Noonan, and Carlos T. Bea,
Circuit Judges.

Opinion by Judge Farris;
Partial Concurrence and Partial Dissent by Judge Noonan

**COUNSEL**

Daniel H. Bromberg, Quinn Emanuel Urquhart & Sullivan, LLP, Redwood Shores, California, for the plaintiff-appellant.

Clark G. Leslie, Department of the Attorney General, Carson City, Nevada, for the defendants-appellees.

---

**OPINION**

FARRIS, Senior Circuit Judge:

Petitioner Raymond Watison, who is serving a sentence in Nevada State Prison, sued defendant prison officials under 42 U.S.C. § 1983 *pro se*, alleging that they violated several of his rights under the U.S. Constitution. He also alleged that the officials violated various Nevada laws. The district court dismissed Watison's complaint with prejudice. Watison appealed the dismissal of some of his claims and had counsel appointed for him. We have jurisdiction under 28 U.S.C. § 1291.

Watison failed to state an Eighth Amendment claim against Correctional Officer Sean LaGier and failed to state a First Amendment retaliation claim against Correctional Officer Joseph Rodriguez, but Watison's First Amendment retaliation claims against Associate Warden Mary Carter and Correctional Officers Rosa Rodriguez, Sean LaGier, and Danilo Santos require further consideration. The district court should not have dismissed Watison's state-law claims with prejudice. We therefore affirm in part, and remand for further proceedings.

I.

**[1]** We review the dismissal of a complaint for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii) *de novo*. *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim. *See, e.g.*, *Lopez v. Smith*, 203 F.3d 1122 (2000). Dismissal is

proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him to relief. *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, we take as true all allegations of material fact stated in the complaint and construe them in the light most favorable to the plaintiff. *Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). We "construe [a *pro se* plaintiff's] pleadings liberally and . . . afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (internal quotation marks omitted).

## II.

Watison alleged that Correctional Officer Sean LaGier sexually harassed him in violation of the Eighth Amendment. He alleged that LaGier entered his (Watison's) cell while Watison was on the toilet and began to search it, that Watison asked LaGier to leave the room, and that LaGier approached Watison while Watison was still on the toilet, rubbed his thigh against Watison's thigh, "began smiling in a sexual contact [sic]," and left the cell laughing.

**[2]** "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Jordan v. Gardner*, 986 F.2d 1521, 1525 (9th Cir. 1993) (en banc) (quoting *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084, 89 L. Ed. 2d 251 (1986)) (internal quotation marks and indications of alteration omitted). The alleged pain may be physical or psychological. *See, e.g.*, *Jordan*, 986 F.2d 1521. Nevertheless, the "inmate must objectively show that he was deprived of something 'sufficiently serious.' " *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994)). For example, in *Jordan*, we held that the Eighth Amendment prohibited clothed body searches of female prisoners by male guards directed by a prison policy to "push inward and upward when searching the crotch and upper

thighs of the inmate," to "squeeze and knead" "the leg and the crotch area," and to "search the breast area in a sweeping motion, so that the breasts will be 'flattened.' " 986 F.2d at 1523 (indications of alteration omitted). The *Jordan* court's finding of serious deprivation relied on the "high probability of . . . severe psychological injury and emotional pain and suffering . . . from these searches" based on the inmates' "shocking histories of verbal, physical, and, in particular, sexual abuse . . . ." *Id.* at 1525. By contrast, "the exchange of verbal insults between inmates and guards is a constant, daily ritual observed in this nation's prisons" of which "we do not approve," but which do not violate the Eighth Amendment. *Somers v. Thurman*, 109 F.3d 614, 622 (9th Cir. 1997) (internal quotation marks omitted). Moreover, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992).

**[3]** The "humiliation" Watison allegedly suffered from the incident with Officer LaGier does not rise to the level of severe psychological pain required to state an Eighth Amendment claim. We have found no Eighth Amendment violation in situations involving more serious deprivations than the deprivation Watison allegedly suffered. For example, in *Somers*, we held that the Eighth Amendment did not prohibit female guards from performing visual body cavity searches on male inmates or watching male inmates shower, despite one inmate's allegation that the guards pointed, joked, and "gawked" at him. *Somers*, 109 F.3d at 616; *see also, e.g.*, *Grummett v. Rushen*, 779 F.2d 491, 494 n.1 (9th Cir. 1985) (prison's policy allowing female guards to observe male inmates disrobing, showering, using the toilet, and being strip-searched, and allowing them to conduct pat-down searches including the groin area, did not amount to "the type of shocking and barbarous treatment protected against by the [E]ighth [A]mendment").

**[4]** We emphasize, as we did in *Somers*, that this case does not present the Eighth Amendment concerns found in *Jordan*.

*See Somers*, 109 F.3d at 623. *Jordan*'s holding relied on (1) the preexisting mental conditions of the female inmates, which caused them "to react differently to [the] searches . . . than would male inmates subjected to similar searches by women," *Jordan*, 986 F.2d at 1525, and (2) the intrusive nature of the searches. *Somers*, 109 F.3d at 624. As in *Somers*, neither of these factors is present here. Watison is a male inmate, and the only physical contact he alleged was a brief brush of LaGier's leg against his own.

The Eighth Circuit reached a similar conclusion in *Berryhill v. Schriro*, 137 F.3d 1073 (8th Cir. 1998). In *Berryhill*, the plaintiff alleged that prison maintenance employees "embarrass[ed] him" in violation of the Eighth Amendment when one of them "grabbed him by the shoulders while [another] grabbed his buttocks with one hand briefly" and a third "grabbed Berryhill's buttocks for a moment." *Id.* at 1074-75 (indications of alteration omitted). The Eighth Circuit found no Eighth Amendment violation because "there is no evidence that Berryhill suffered anything more than a brief unwanted touch on his buttocks" and "[i]t would be a distortion . . . to characterize the conduct in this case as a sexual assault." *Id.* at 1076. Like Watison's, Berryhill's "humiliat[ion]" did not constitute "objectively serious injury (either physical or psychological)." *Id.*[1]

---

[1]This Eighth Amendment jurisprudence is consistent with Supreme Court precedent on sexual harassment. The Supreme Court has held that "simple teasing, offhand comments, and *isolated incidents* (unless extremely serious) will not amount to [a] discriminatory [hostile environment] . . . ." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283, 141 L. Ed. 2d 662 (1998) (internal quotation marks and citations omitted) (emphasis added); *see also Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 271, 121 S. Ct. 1508, 1510, 149 L. Ed. 2d 509 (2001) (holding that comments and chuckling by co-workers were "at worst an 'isolated inciden[t]' that cannot remotely be considered 'extremely serious,' as our cases require") (citing *Faragher*, 524 U.S. at 788, 118 S. Ct. at 2283) (alteration in original).

Watison argues that the alleged incident "plainly violates contemporary standards of decency" because "unwanted sexual contact by prison officials is now forbidden by *every* state." LaGier's alleged conduct, however, is not the type of conduct these laws forbid. *See, e.g.*, Ala. Code §§ 14-11-31, 14-11-30(3) (forbidden "sexual conduct" defined to include sexual intercourse and "touching[,] for the purpose of sexual arousal, gratification, or abuse[,] of . . . sexual or other intimate parts"); Or. Rev. Stat. §§ 163.454, 163.305(6) (forbidden "sexual contact" defined as "touching of the sexual or other intimate parts of a person . . . for the purpose of arousing or gratifying the sexual desire of either party"); Vt. Stat. Ann. tit. 13, §§ 3257, 3251(1) (definition of forbidden conduct does not include touching thigh to thigh); Wis. Stat. §§ 940.225(2)(h), (5)(b), 5(c) (same). Therefore, Watison's citations do not aid his argument.

**[5]** Because Officer LaGier's "alleged wrongdoing was [not] objectively 'harmful enough' to establish a constitutional violation," the district court properly dismissed Watison's Eighth Amendment claim against LaGier. *Hudson*, 503 U.S. at 8, 112 S. Ct. at 999 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324, 115 L. Ed. 2d 271 (1991)).

### III.

**[6]** Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). A retaliation claim has five elements. *Id*. First, the plaintiff must allege that the retaliated-against conduct is protected. The filing of an inmate grievance is protected conduct. *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005). Second, the plaintiff must claim the defendant took adverse action against the plaintiff. *Id*. at 567. The adverse action need not be an independent constitutional violation. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). "[T]he mere *threat* of

harm can be an adverse action . . . ." *Brodheim*, 584 F.3d at 1270.

Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct. Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal. *See Pratt*, 65 F.3d at 808 ("timing can properly be considered as circumstantial evidence of retaliatory intent"); *Murphy v. Lane*, 833 F.2d 106, 108-09 (7th Cir. 1987).

Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Robinson*, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," *Brodheim*, 584 F.3d at 1269, that is "more than minimal," *Robinson,* 408 F.3d at 568 n.11. That the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage. *Id*. at 569.

Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution . . . ." *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, *id*., or that they were "unnecessary to the maintenance of order in the institution," *Franklin v. Murphy*, 745 F.2d 1221, 1230 (9th Cir. 1984).

## A.   *Claims Against Associate Warden Carter and Officer Rosa Rodriguez*[2]

---

[2]We treat the allegations as true solely for the purpose of reviewing the sufficiency of the allegations. *Dougherty v. City of Covina*, 654 F.3d 892, 896 n.2 (9th Cir. 2011). Their recitation should not be taken to express our belief in their accuracy.

Watison claimed that Associate Warden Mary Carter and Correctional Officer Rosa Rodriguez retaliated against him for filing grievances against Rodriguez. Watison claimed that on May 20, 2009, Rodriguez, "[i]n retaliation" for a grievance Watison had previously filed against her for racial discrimination, falsely "wrote [Watison] up" for calling her an expletive. On May 27, Watison filed another grievance against Rodriguez. "[D]ue to [these] allegations [Watison] had against defendant Mrs. Rodriguez," Rodriguez and Carter had Watison placed in administrative segregation that same day. At Watison's May 29 parole hearing, Carter, in "retaliati[on] [for] numerous amounts of complaints/grievances [Watison filed] against her . . . and another prison official [Rodriguez]," falsely stated that Watison had been placed in administrative segregation because he had used abusive language toward staff. "[D]ue to [Carter's] lies," the parole board found that Watison had engaged in "disruptive institutional behavior" and denied Watison parole.

**[7]** Watison alleged facts sufficient to state a First Amendment retaliation claim. Watison alleged (1) that he engaged in protected actions: he filed grievances against Rodriguez. He alleged (2) that Rodriguez and Carter took adverse actions against him: Rodriguez filed a false disciplinary charge against him; he was placed in administrative segregation; and Carter's lies to the parole board resulted in denial of parole. Watison also alleged (3) a connection between (1) and (2): Rodriguez and Carter took these adverse actions shortly after, and "[i]n retaliation" for, Watison's filing of grievances against Rodriguez. He alleged (4) that the retaliatory actions would have chilled or silenced a person of ordinary firmness by alleging "more than minimal" harms—the filing of a false disciplinary charge against Watison, his placement in administrative segregation, and interference with his parole hearing. Finally, Watison alleged (5) the absence of a legitimate penological reason for the alleged adverse actions: Watison pleaded arbitrary, capricious, and retaliatory conduct in pleading that (a) Rodriguez filed a *false* disciplinary complaint

against him and (b) Carter made *false* statements to the parole board, both in retaliation for grievances Watison had filed against Rodriguez. Watison sufficiently pleaded First Amendment retaliation claims against Carter and Rodriguez. The district court improperly dismissed these claims.

## B.   *Claim Against Officer Santos*

Watison claimed that Correctional Officer Danilo Santos retaliated against him for filing grievances against Santos. He claimed that on July 7, 2009, Santos "became very angry with" Watison, "walked directly in [Watison's] face and stated 'your emergency grievance isn't going to stand,' " and threatened to hit Watison in the mouth for a complaint Watison was in the process of filing against Santos.

**[8]** The district court also improperly dismissed this claim. Watison alleged (1) that he engaged in a protected action: he filed a grievance against Santos. He alleged (2) that Santos took adverse action against him: Santos threatened to hit him in the mouth. Watison also alleged (3) a connection between (1) and (2): Santos threatened to hit Watison "for" a grievance Watison filed against Santos. Watison alleged (4) chilling conduct—the threat of physical violence. Finally, the facts Watison alleged implicitly pleaded the fifth element: threatening to punch a prisoner serves no penological interest. Watison's First Amendment claim against Santos should not have been dismissed.

## C.   *Claim Against Officer LaGier*

Watison claimed that Officer LaGier retaliated against him for filing grievances against LaGier. Watison claimed that on Aug 11, 2009, LaGier refused to give Watison his breakfast, stared in Watison's room smiling at him, and said, " 'They're not going to do nothing with those grievances you filed against me.' " Watison then asked LaGier for an "informal grievance." LaGier responded with an expletive and refer-

enced a grievance Watison had previously filed against LaGier. Watison alleged that "the meal refusals were [in] retaliation" for Watison's "filing a grievance against [LaGier]."

[9] The district court should not have dismissed Watison's First Amendment claim against LaGier. Watison alleged (1) that he engaged in protected actions: he filed grievances against LaGier. He alleged (2) that LaGier took adverse actions against him: LaGier refused to give him breakfast. Watison also alleged (3) a connection between (1) and (2): during the same interaction in which LaGier refused to give Watison breakfast, LaGier mentioned the grievances. He alleged (4) chilling conduct by alleging "more than minimal" harm—deprival of food. Finally, Watison alleged the fifth element: Watison alleged that LaGier's conduct was retaliatory; and Watison's allegation that he asked to file a grievance about LaGier's denying him breakfast sufficiently raised a question regarding the basis for the meal refusal.

### D. Claim Against Officer Joseph Rodriguez

In his complaint, Watison alleged the following:

> On July 5, 2009 . . . Rodriguez became very angry in his voice of tone . . . [and] aimed [a] gun at me and cocked it back. . . . Defendant had no reason, justification to aim a gun at me . . . . I've filed complaints against defendant and defendant is retaliating against me.
>
> . . . . .
>
> Count IV Eighth Amendment[:] . . . On date of 07/ 05/09 . . . Mr. Rodriguez begain [sic] yelling and screaming[.] I (inmate) acknowledged him aim a 12 gauge directly at me. Cock it back and repeat[ed]ly yelling and screaming. I (inmate) then stated "What

you want?" C/O Mr. Rodriguez then with draw the gun back. I filed an emergency grievance and exhausted the grievance process and been denied. And I'm now being harassed by the same officer.

**[10]** Because Watison labeled this claim as an Eighth Amendment claim, the district court addressed it as such and dismissed it. Watison argues that the district court should have treated the claim as a First Amendment retaliation claim, characterizing Rodriguez's gun-pointing as retaliation for grievances Watison filed against him. In fact, the complaint alleged that Watison filed a grievance *in response to* the gun-pointing incident, and that he is "*now* being harassed" in retaliation for that grievance. If there is any retaliation claim against Rodriguez to be found in Watison's complaint, then, it is that Rodriguez is now "harass[ing]" Watison in retaliation for the emergency grievance Watison filed against Rodriguez. This harassment-retaliation claim fails. Watison alleged no facts about Rodriguez's alleged harassing behavior, and he failed to allege that the harassment constitutes chilling conduct, is connected to Watison's filing of the emergency grievance, and lacks a penological justification. The district court properly dismissed this claim.

**[11]** However, on remand, the district court should grant Watison leave to amend this claim to correct its deficiencies. Federal Rule of Civil Procedure 15(a) provides that a trial court shall grant leave to amend freely "when justice so requires." "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (internal quotation marks omitted). The "rule favoring liberality in amendments to pleadings is particularly important for the pro se litigant." *Lopez*, 203 F.3d at 1131 (internal quotation marks omitted). Here, Watison might cure his pleadings by alleging more facts—namely, the what, when, and where of Rodriguez's alleged harassing behavior;

the harassment's chilling effect; its connection to the grievance Watison filed against Rodriguez; and the absence of a penological justification for Rodriguez's behavior.

## IV.

In addition to federal constitutional claims, Watison alleged eleven claims under Nevada Revised Statutes §§ 197.200 (oppression under color of office), 197.210 (fraudulent appropriation of property), 197.220 (other violations by officers), and 212.020 (inhumanity to prisoners)—all criminal statutes. The district court dismissed these claims with prejudice, without explanation. We suspect the district court declined to exercise supplemental jurisdiction over the state-law claims once it had dismissed the federal claims. *See* 28 U.S.C. § 1367(c)(3). If so, the court should have dismissed the state-law claims *without* prejudice. *See Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 509 (9th Cir. 1989).

**[12]** On remand, the district court will have original jurisdiction over Watison's First Amendment claims and shall decide anew whether to exercise supplemental jurisdiction over the state-law claims. *See, e.g.*, *Fang v. United States*, 140 F.3d 1238, 1244 (9th Cir. 1998). The district court may, in its discretion, decline to exercise supplemental jurisdiction on the basis that a state court should decide in the first instance the "novel or complex issue of State law" of whether the criminal statutes on which Watison's state-law claims are based give rise to civil liability—and if not, whether Watison's allegations nevertheless sufficiently plead state common-law claims, such as tort claims, against the defendants. 28 U.S.C. § 1367(c)(1); *see, e.g.*, *Robinson v. Baca*, No. 3:08-cv-00389-HDM-VPC, slip op. at 5, 2010 WL 3724189 (D. Nev. Aug. 25, 2010) (declining to exercise supplemental jurisdiction over plaintiff's state-law claims in part because "the question of whether the cited criminal statutes convey a private right of action should be determined by a state court"); *see generally Collins v. Palczewski*, 841 F. Supp. 333, 340 (D. Nev.

1993) ("[C]riminal statutes cannot be enforced by civil actions [unless] . . . the plaintiffs [are] members of the public that the statutes were specifically designed to protect.") (internal quotation marks and citations omitted) (citing *Cort v. Ash*, 422 U.S. 66, 78-82, 95 S. Ct. 2080, 2088-90, 45 L. Ed. 2d 26 (1975); *United States v. Claflin*, 97 U.S. 546, 24 L. Ed. 1082 (1878); *United States v. Jourden*, 193 F. 986 (9th Cir. 1912)).**³** The inquiry into whether the complaint states common-law claims is necessary because a "complaint should not be dismissed merely because plaintiff's allegations do not support the legal theory he intends to proceed on, since the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory." *Pruitt v. Cheney*, 963 F.2d 1160, 1164 (9th Cir. 1991). Alternatively, the district court may decide that it should retain supplemental jurisdiction over the state-law claims. Even claims with slight monetary value survive a motion to dismiss, unless we can say with certainty that no factual basis has been alleged.

## V.

**[13]** We affirm the dismissal with prejudice of Watison's Eighth Amendment claim against Officer LaGier. We reverse the court's dismissal of Watison's First Amendment retaliation claims against Associate Warden Carter and Officers Rosa Rodriguez, LaGier, and Santos, and remand those claims for further proceedings. We reverse the denial of leave to amend Watison's First Amendment retaliation claim against Officer Joseph Rodriguez, and remand with instructions to grant Watison leave to amend that claim. Finally, we

---

**³**The Nevada Supreme Court has held that Nev. Rev. Stat. § 197.200 does not give rise to civil liability. *See Jordan v. State ex rel. Dep't of Motor Vehicles & Pub. Safety*, 110 P.3d 30, 48, 121 Nev. 44, 69 (Nev. 2005), *abrogated on other grounds by Buzz Stew, LLC v. City of N. Las Vegas*, 181 P.3d 670, 124 Nev. 224 (Nev. 2008). A federal district court has held the same with respect to Nev. Rev. Stat. § 212.020. *See Mitchell v. Skolnik*, No. 2:09-CV-02377-KJD-PAL, slip op. at 9, 2011 WL 3626598 (D. Nev. Aug. 11, 2011).

reverse the dismissal with prejudice of Watison's state-law claims and remand with instructions to decide whether to exercise supplemental jurisdiction over those claims.

Each party shall bear its own costs on appeal.

AFFIRMED in part, REVERSED in part, and REMANDED.

---

NOONAN, Circuit Judge, concurring and dissenting:

I concur except as to the holding that dismisses Watison's claim under the Eighth Amendment. The incident central to this claim is, for good reason, one that has not been the subject of appellate litigation: the grossness of the conduct alleged is not likely to have often occurred. In a word, a prisoner sitting in his own cell on his toilet was allegedly rubbed on his thigh by a prison guard who had entered the cell. The sexual implications of this stroking plus the interference with the prisoner's discharge of his bladder amounted to the infliction of psychological pain. Given the privacy allegedly invaded, this kind of pain was sufficiently serious to constitute constitutionally prohibited cruelty.

We do not have, and need not have, a precedent exactly governing the case. A century ago the Supreme Court set out the governing principle:

> Time works changes, brings into existence new conditions and purposes. Therefore a principle to be vital must be capable of wider application than the mischief which gave it birth. This is peculiarly true of constitutions. They are not ephemeral enactments, designed to meet passing occasions. They are, to use the words of Chief Justice Marshall, 'designed to approach immortality as nearly as human institutions

can approach it.' The future is their care and provision for events of good and bad tendencies of which no prophecy can be made. In the application of a constitution, therefore, our contemplation cannot be only of what has been but of what may be. Under any other rule a constitution would indeed be as easy of application as it would be deficient in efficacy and power. Its general principles would have little value and be converted by precedent into impotent and lifeless formulas. Rights declared in words might be lost in reality. And this has been recognized. The meaning and vitality of the Constitution have developed against narrow and restrictive construction.

*Weems v. United States*, 217 U.S. 349, 373 (1910).

The prohibition of cruel and unusual punishment covers the case presented by Watison.