Leroy COLLINS, Plaintiff,

v.

William PALCZEWSKI,
et al., Defendants.

No. CV–N–92–768–ECR.

United States District Court,
D. Nevada.

Oct. 25, 1993.

LeRoy Collins, pro se.

Marc Cardinalli, Deputy Atty. Gen., Carson City, NV, for defendants.

### ORDER

EDWARD C. REED, Jr., District Judge.

Plaintiff Leroy Collins, in pro se, filed the present complaint against Defendants William Palczewski, Ray Procunier, Robert Hume, Matthew Hibbs, Frank Armenta, and Charles Wolff, Jr., under 42 U.S.C. § 1983 for alleged violations of his due process and equal protection rights. Plaintiff is an inmate incarcerated within Ely State Prison (ESP). Defendants are all officials of Nevada Department of Prisons (NDOP) at ESP.

Count One of Plaintiff's Amended Complaint (document # 15) contends Defendant Palczewski violated Plaintiff's due process rights by terminating his employment at Prison Industries (PI) without following established NDOP administrative regulations. Count One also alleges Defendant Procunier did not permit Plaintiff to take a drug test to clear himself of Palczewski's accusations of drug use.

Count Two alleges Defendants Procunier and Wolff violated Plaintiff's due process rights by failing to act upon his grievances where they had a clear duty to do so.

Count Three alleges Defendants Hume, Hibbs and Armenta, comprising the Classification Committee, violated Plaintiff's due process rights by failing to reinstate Plaintiff to his job after stating he would be allowed to return to work. Thus, Defendants Hume, Hibbs and Armenta allegedly deprived Plaintiff of approximately 910 days of good-time credits. Count Three further alleges that Defendant Palczewski violated Plaintiff's due process rights by submitting the suspension notice thirty days late to the Classification Committee.

Count Four alleges that "the defendants as herein described" denied Plaintiff equal protection of the laws by failing to follow administrative regulations.

Finally, Count Five alleges Defendants violated Nevada Revised Statute § 197.200, a criminal statute which prohibits oppression under color of office.

Defendants responded by filing a Motion to Dismiss/Motion to Stay (document # 17), which is currently before this Court. Defendants move to dismiss Counts Four and Five, dismiss Defendants Procunier and Wolff, and stay the entire matter pending Plaintiff's exhaustion of his state and federal habeas corpus remedies. Defendants' Motion to Strike (document # 19) must also be ruled upon. Defendants move to strike Plaintiff's Reply in Opposition to Motion to Dismiss/Motion to Stay (document # 18).

### DISCUSSION

#### A. MOTION TO STRIKE

Defendants filed their Motion to Dismiss without attaching any exhibits or affidavits thereto (document # 17). In response Plaintiff filed an Opposition to the Motion to Dismiss, attaching eight exhibits (document # 18). Defendants seek to strike the opposition because of the extraneous materials (document # 19). Generally, when one party moves to dismiss solely upon the pleadings; as is the present case, it is inappropriate for the responding party to introduce extraneous materials in an attempt to convert the dismissal motion into one for summary judgment under Rule 56. *Hong Kong Supermarket v. Kizer*, 830 F.2d 1078, 1080 n. 1 (9th Cir.1987). Plaintiff expressly attempts to do just that (document # 18, 7).

This Court retains discretion to exclude the consideration of matters outside the pleadings on a motion to dismiss under Fed.R.Civ.P. 12(b)(6).[1] *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3rd Cir.1992); *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 193 n. 3 (5th Cir.1988), *cert. denied*, 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988); *Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2nd Cir.1988); *see also Jackson v. Southern California Gas Co.*, 881 F.2d 638, 642 n. 4 (9th

---

1. Fed.R.Civ.P. 12(b) states in relevant part: "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to *and not excluded by the court,* the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...." (emphasis added).

Cir.1989) ("motion to dismiss is not automatically converted into motion for summary judgment whenever matters outside the pleadings happen to be filed with the court").[2] If the court does not exclude consideration of the extraneous materials, Rule 12(b) requires the motion to be treated as one for summary judgment under Rule 56. Fed.R.Civ.P. 12(b)(6), *see supra* note 1; *Carter v. Stanton*, 405 U.S. 669, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972); *Grove v. Mead School District No. 354*, 753 F.2d 1528, 1532 (9th Cir.1984), *cert. denied*, 474 U.S. 826, 106 S.Ct. 85, 88 L.Ed.2d 70 (1985).

■ The central question is whether the proffered materials and additional procedures required by Rule 56 will facilitate disposition of the action or whether the court can base its decision upon the face of the pleadings. 5A Wright & Miller, Federal Practice and Procedure § 1366, at 493 (1990). Some of the materials referenced in, and attached to, Plaintiff's reply possess relevance to the matters before this Court. On the other hand, the vast majority of materials are outside the face of the pleadings, irrelevant or inconclusive. Because the materials that demonstrate relevance are referenced in Plaintiff's complaint, Plaintiff's opposition contributes nothing to the disposition of the case.

Thus, the Court will not consider the exhibits attached to Plaintiff's reply, and will address Defendants' Motion to Dismiss (document # 17) under Rule 12(b)(6).

## B. STANDARD FOR 12(b)(6) MOTION TO DISMISS

■ Upon a motion to dismiss, the Court presumes that the facts alleged by the plaintiff are true. *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 515, 92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1972); *Halet v. Wend Inv. Co.*, 672 F.2d 1305, 1309 (9th Cir.1982); *Amfac Mortgage Corp. v. Arizona Mall of Tempe*, 583 F.2d 426, 430 (9th Cir.1978). "Such a dismissal cannot be upheld unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts that could be

proved." *Halet* at 1309, *quoting Beneficial Life Insurance Co. v. Knobelauch*, 653 F.2d 393, 395 (9th Cir.1981); *see also Adult Video Assoc. v. Barr*, 960 F.2d 781, 784 (9th Cir. 1992). Furthermore, allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d. 652 (1972) (per curiam).

## C. MOTION TO DISMISS/MOTION TO STAY

### 1. *Is a Protected Liberty or Property Interest Implicated?*

The primary element of Plaintiff's § 1983 claim is that Defendants denied him property and/or liberty without due process of law, by discharging Plaintiff from his prison assignment and by failing to reinstate him. The complaint alleges Defendant Palczewski discharged Plaintiff from his PI assignment without following proper procedure as delineated in NDOP administrative regulations. The complaint further alleges that Defendants Procunier, Wolff, Hume, Hibbs and Armenta failed to return Plaintiff to his PI assignment after being made aware of the discharge, in violation of NDOP administrative regulations and ESP institutional procedures.

■ The Due Process Clause of the Fourteenth Amendment provides that no State may "deprive any person of life, liberty, or property, without due process of law." The court must determine whether a due process violation has occurred by way of a two-step process. *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989). The threshold question is whether a constitutionally protected interest is implicated. *Meachum v. Fano*, 427 U.S. 215, 223–224, 96 S.Ct. 2532, 2537–38, 49 L.Ed.2d 451 (1976); *Baumann v. Arizona Dept. of Corrections*, 754 F.2d 841, 843 (9th Cir.1985); *Williams v. Sumner*, 648 F.Supp. 510, 511 (D.Nev.1986).

**2.** "The court has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion." 5A Wright & Miller, Federal Practice and Procedure § 1366, at 491 (1990).

[T]o obtain a protectable right 'a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'

*Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2103–04, 60 L.Ed.2d 668 (1979), *quoting Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) Indeed, "[n]ot every 'grievous loss' suffered at the hands of the state will require the procedural protection of constitutional due process." *Baumann,* 754 F.2d at 843, *citing Meachum,* 427 U.S. at 224, 96 S.Ct. at 2538.

### a. Constitutionally Created Interest

■ Protected interests arise from the Constitution itself or from an independent source, such as state statutory law or administrative regulations. *Thompson,* 490 U.S. at 460, 109 S.Ct. at 1908; *Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d 675 (1983); *Smith v. Sumner,* 994 F.2d 1401, 1405 (9th Cir.1993); *Mendoza v. Blodgett,* 960 F.2d 1425, 1428 (9th Cir.1992), *cert. denied,* ─── U.S. ───, 113 S.Ct. 1027, 122 L.Ed.2d 173 (1993). Furthermore, although a prisoner's rights must necessarily be diminished by the nature of incarceration, "a prisoner is not wholly stripped of constitutional protections." *Wolff v. McDonnell,* 418 U.S. 539, 555, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974).

■ Notwithstanding the existence of some constitutional protections for prisoners, it is well settled that "the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison." *Wolff,* 418 U.S. at 557, 94 S.Ct. at 2975. Nor does the Constitution grant a prisoner an independent right to prison employment. *Williams,* 648 F.Supp. at 512; *see also Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. (respondent enjoyed no independent constitutionally created property right to employment).

### b. State Created Interest

■ Since a protected liberty or property interest in prison employment does not arise from the Constitution, Plaintiff's entitlement to his PI assignment hinges upon whether a protected interest has been created by the State.[3] *Thompson,* 490 U.S. at 460–61, 109 S.Ct. at 1908–09. Plaintiff contends that "[t]he prison created a right for inmates to keep their jobs at Prison Industries absent specified reasons" (document #15, at 3). Thus, this Court must determine whether Nevada created such a protected interest, as Plaintiff contends. If so, we would need to reach the second step in Due Process analysis; namely, whether the Defendants followed minimal procedures as required by the Due Process Clause.

A state may create a protected property or liberty interest by placing substantive limitations on official discretion with "particularized standards" or "objective and defined criteria." *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983), *quoting Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 467, 101 S.Ct. 2460, 2466, 69 L.Ed.2d 158 (1981) (Brennan, J., concurring). Additionally, the Court explained, in order to create a protected interest the State must use "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed." *Hewitt,* 459 U.S. at 471–72, 103 S.Ct. at 871. However, courts must be wary because "[a]lthough a search for mandatory language necessarily focuses on words such as 'shall' and 'will,' mere use of these words is insufficient." *Mendoza,* 960 F.2d at 1429, *quoting Toussiant v. McCarthy,* 801 F.2d 1080, 1098 (9th Cir. 1986), *cert. denied,* 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987). In *Greenholtz,* the Court, recognizing a state created liberty interest, focused on the unique language of a Nebraska statute mandating that parole *"shall"* be granted *"unless* any one of the four specifically designated reasons are found." *Greenholtz,* 442 U.S. at 11–12, 99 S.Ct. at 2106.

---

**3.** "[A] person's liberty is equally protected, even when the liberty itself is a statutory creation of the State. The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff,* 418 U.S. at 558, 94 S.Ct. at 2975, *citing, Dent v. West Virginia,* 129 U.S. 114, 123, 9 S.Ct. 231, 233, 32 L.Ed. 623 (1889).

In short, "a state creates a liberty interest by both (1) establishing 'substantive predicates to govern official decisionmaking,' and (2) using 'explicitly mandatory language, i.e., specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow.'" *Smith,* 994 F.2d at 1405, *quoting Thompson,* 490 U.S. at 462–63, 109 S.Ct. at 1909–10.

*Nevada Revised Statutes*

NRS § 209.459 states, in relevant part: The director [of NDOP] shall ... establish and carry out a program for the employment of offenders in services and manufacturing conducted by institutions of the department or by private employers.

NRS § 209.461 describes the duties of the director:

1. The director shall:

   (b) To the extent practicable, require each offender, except those whose behavior is found by the director to preclude participation, to spend 40 hours each week in vocational training or employment, unless excused for a medical reason.

2. Every program for the employment of offenders established by the director must:

   (a) Employ the maximum number of offenders possible;

Read together, NRS §§ 209.459 and 209.461, require the establishment of an employment program for prisoners. The question remains whether the language creates a legitimate expectation of employment, and therefore, a protected property or liberty interest for any particular prisoner.

Although the statutes use the word "shall" and "must," that language is qualified. The director shall employ each offender only to "the extent practicable." Additionally, § 209.461(1)(b) expressly grants the director discretion to exclude those offenders whose behavior he finds unsatisfactory. This Court has previously held the qualified language of these statutes lack the required "unmistakably mandatory character" *and* "particular-

ized standards" that *necessitate* a particular outcome. *Williams,* 648 F.Supp. at 512. Thus, the relevant Nevada statutory language does not create a protected liberty interest.

Plaintiff alleges, however, that the more specific NDOP regulations and ESP procedures create a protected right. Certainly, if administrative regulations meet the "shall/unless" standard, "[p]ublished prison regulations may create a protected interest" *Baumann,* 754 F.2d at 844, *citing Olim,* 461 U.S. at 249–50, 103 S.Ct. at 1747–48. The Amended Complaint references NDOP Administrative Regulations (A.R.) 503, 506, and 525, as well as, ESP Institutional Procedures (I.P.) 5.1 and 5.3.

*Administrative Regulation 503*

Plaintiff alleges that the Classification Committee, comprised of Defendants Hume, Hibbs and Armenta, deprived him of "910 days of work good time credits, which he would have received had he been permitted to return to his prison job, pursuant to A.R. 503" (document #15, at 6). A.R. 503 provides general standards for conducting all classification hearings, not the accumulation of good-time credits. A.R. 503 primarily focuses on the custodial classification of prisoners, e.g., whether a prisoner should be reclassified from the general prison population to a more restricted environment, or transferred to another institution. A.R. 503 specifically mentions work assignments only once, compelling the reader to "conform to the nomenclature described in the Classification System Instruction Manual."[4] A.R. 503, at 3.

Moreover, A.R. 503 uses the words "should" and "may" throughout the substantive "procedures" section when describing the duties of the classification committee. A.R. 503 mandates particular action only in a handful of immaterial provisions. In short, A.R. 503 fails to infer that prisoners are entitled to a prison assignment or good-time credits.[5]

---

**4.** The Classification System Instruction Manual contains more specific procedural guidelines. No where does the Manual infer that prisoners are entitled to a prison work assignment.

**5.** Additionally, A.R. 503 provides the following limitation: "It is not intended that the establishment of standards relating to classification create any right or interest in life, liberty or property or establish a basis for cause of action against the

*Administrative Regulation 506*

Plaintiff alleges that Defendant Palczewski failed to submit a written report to the classification committee in a timely manner, which "precluded plaintiff's special reclassification review and reasonable prior notice pursuant to A.R. 506" (document # 15, at 4). Additionally, Plaintiff contends he was denied equal protection of the laws by Defendants' failure to follow the procedures provided in A.R. 506 (document # 15, at 7).

The "special reclassification" section of A.R. 506 provides in relevant part:

Changes in some inmate case factors should be reviewed as soon as possible, and should not be delayed until the mandatory 6 month reclassification date. When such an occasion arises the inmate may be scheduled for a special review.

The "general provisions" section further provides:

Inmates will receive reasonable prior notice of scheduled classification. 'Reasonable prior notice' may be satisfied by posting the classification list in an area accessible to the inmate.

A.R. 506, at 2. A.R. 506 does not entitle prisoners to a special reclassification hearing. The decision whether or not to grant a special reclassification hearing is clearly a discretionary act. The only mandatory language, with respect to prisoner notice, pivots upon whether a hearing is granted. Nowhere could Plaintiff legitimately infer that a property or liberty right was created by the language of A.R. 506.

Furthermore, assuming the facts alleged in the complaint are true, this Court cannot agree with Plaintiff that the Defendants failed to follow the procedures delineated in A.R. 506.[6] The Amended Complaint itself

states that "[o]n October 24, 1991, plaintiff appeared before the classification committee . . . to determine whether plaintiff should return to his job" (document # 15, at 6). The hearing date was approximately thirty-seven (37) days after Plaintiff was discharged from his PI assignment, and exactly one month after Plaintiff filed his first complaint to ESP authorities (document # 15, at 4–5). The Court finds the time period reasonable, and in compliance with A.R. 506. The complaint further indicates that Defendant Palczewski did submit a suspension notice (document # 15, at 6). Plaintiff made no allegations that the notice was improperly posted. Indeed, Plaintiff was obviously aware of the suspension notice and understood its contents (document # 15, at 6). Thus, this Court cannot discern how Defendant Palczewski's actions precluded a special reclassification review or denied plaintiff reasonable prior notice pursuant to A.R. 506.

Plaintiff also fails to allege any facts that demonstrate how he was treated any differently from other prisoners. Count Four of the complaint contends, in conclusory language, that Defendants denied Plaintiff equal protection of the laws because he was not afforded the procedures outlined in A.R. 506 (document # 15, at 7). This Court finds, based upon the facts as alleged in Plaintiff's complaint and the foregoing rationale, that Defendants followed proper procedure and treated Plaintiff the same as other similarly situated prisoners.

*Administrative Regulation 525*

Plaintiff alleges that Defendant Palczewski did not submit a written report to the classification committee stating the reasons why plaintiff was removed from the assignment as required by A.R. 525. As a result, the complaint alleges, Plaintiff's "assignment from PI

state . . . [or] its officers, or employees. Reliance on any published standard . . . are for guidance purposes only and does not create any liberty interest." A.R. 503, at 2. Thus, Plaintiff should have been on notice that A.R. 503 did not create any liberty or property interest in his prison assignment, assuming it contained language to that effect. Although the express limitations contained in A.R. 503 put prisoners on notice that no right is created, the qualifying language is not dispositive. If the regulations contained mandatory language *and* particularized standards,

which they do not, a prisoner may have a legitimate expectation to prison employment notwithstanding any qualifications to the contrary.

**6.** The Court need not reach the question as to the procedures employed because A.R. 506 fails to create a property or liberty interest that requires further due process scrutiny. However, on a motion to dismiss the court must examine the facts as alleged to determine if Plaintiff has a cause of action.

was not acted upon within one (1) week, pursuant to A.R. 525" (document # 15, at 4). Additionally, Plaintiff contends he was denied equal protection of the laws by Defendants' failure to follow the procedures provided in A.R. 525 (document # 15, at 7).

A.R. 525, entitled Prison Industry Classification, provides in relevant part:

> PI supervisors may remove inmate workers from their job for poor productivity as well as disciplinary reasons, i.e., refusal to work, fighting, etc., however, only the classification committee can formally unassign the inmate. In these instances, the PI supervisor is to submit a written report to the Classification Committee stating the reasons for removal from the assignment.
>
> Inmates recommended for removal from PI by the industry supervisor for behavior or production related problems will be suspended without pay pending review by the classification committee.

A.R. 525, at 2. A.R. 525 unequivocally grants the PI supervisor the discretion to remove prisoners from their assignment. A.R. 525 further grants the classification committee the discretionary power to sanction the removal or reinstate the prisoner to his PI assignment. A.R. 525 fails to outline any "particularized standards" for removal, or mandate that prisoners "shall" maintain their PI assignments "unless" specifically designated reasons are found.

Plaintiff's complaint also contains prima facie inconsistencies and erroneous references with respect to A.R. 525. Plaintiff alleges that Defendant Palczewski failed to submit a written report, while the complaint specifically refers to the report Palczewski submitted to the classification committee (document # 15, at 6). In addition, Plaintiff erroneously cites a provision in A.R. 525 that requires action by the classification committee within one week. This provision falls under the heading "Assignment *to* Prison Industry," not "Reclassification *from* a Prison Industry." The section which applies to reclassification *from* a PI assignment contains no such timeliness requirement.

Moreover, in an analogous limitation to A.R. 503, A.R. 525 qualifies what can be inferred from its provisions, stating that "[t]his regulation does not create any right for any inmate to be assigned to any prison industry." A.R. 525, at 1. Thus, Plaintiff should have been on notice that A.R. 525 did not create any liberty or property interest in his prison assignment.[7]

Plaintiff also fails to allege any facts that demonstrate he was treated any differently from other prisoners. Count Four of the complaint contends in conclusory language that Defendants denied Plaintiff equal protection of the laws because he was not afforded the procedures outlined in A.R. 525 (document # 15, at 7). This Court finds, based upon the facts as alleged in Plaintiff's complaint and the foregoing rationale, that Defendants followed proper procedure and treated Plaintiff the same as other similarly situated prisoners.

*Institutional Procedures 5.1 & 5.3*

Lastly, Plaintiff alleges violations of institutional procedures 5.1 and 5.3. Plaintiff contends that I.P. 5.1 requires that "[i]nmates will not lose their jobs absent specified misconduct (document # 15, at 5). Plaintiff alleges further that the failure of Defendants Hume, Hibbs, and Armenta to reinstate Plaintiff to his P.I. assignment violated I.P. 5.3. (document # 15, at 6). Neither allegation possess validity.

Institutional Procedure 5.1 provides in relevant part:

> All inmate assignments, changes, and removals from jobs or programs will be made by a classification committee.
>
> B. When the supervisor desires to remove an inmate from an assignment, the supervisor must notify the classification committee in writing.... The classification committee will then take the appropriate action.
>
> C. If an inmate is disruptive in the assigned work area, or commits an offense which justifies disciplinary action, the supervisor shall have the inmate immediately escorted from the work area by custodial staff. The classification com-

---

7. *See supra* note 5.

mittee will be informed and will take the appropriate action.

I.P. 5.1 at 1. Contrary to what Plaintiff contends, nowhere does I.P. 5.1 state that prisoners will lose their P.I. assignments only for specified misconduct.

Institutional Procedure 5.3, entitled "Duties of Institutional Classification Committee," does establish criteria for classification and reclassification of prisoners at ESP. However, I.P. 5.3 addresses custody classification and mentions work assignments only once. The sole reference to work assignments is irrelevant to the facts of this case. Contrary to what Plaintiff contends, nowhere does I.P. 5.3 provide guidelines for counselors regarding reinstatement to work assignments.

Thus, neither Nevada statutory law, nor prison administrative regulations create a protected liberty or property interest.

2. *Were Constitutionally Required Minimum Procedures Followed?*

Based on the foregoing rationale, this Court does not reach the second step in due process analysis. We need not scrutinize whether Defendants followed minimum mandatory procedures because Defendants did not deprive Plaintiff of a constitutionally protected property or liberty interest.

3. *Motion to Dismiss Count Five*

■ Count Five alleges Defendants violated Nevada Revised Statute § 197.200, a criminal statute which prohibits oppression under color of office (document # 15, at 7).

Long ago the courts of these United States established that "criminal statutes cannot be enforced by civil actions." *Bass Angler Sportsman Soc. v. United States Steel Corp.*, 324 F.Supp. 412, 415 (S.D.Ala.1971), *citing United States v. Claflin*, 97 U.S. 546, 24 L.Ed. 1082 (1878); *United States v. Jourden*, 193 F. 986 (9th Cir.1912). Only in very limited circumstances have courts found private actions maintainable under criminal statutes. Without exception, the plaintiffs have been members of the public that the statutes were specifically designed to protect. *American Post. Wkrs. U., Detroit v. Independent Post. Sys.*, 481 F.2d 90, 93 (6th Cir.1973); *see also Cort v. Ash*, 422 U.S. 66, 78–82, 95 S.Ct. 2080, 2088–90, 45 L.Ed.2d 26 (1975) (finding that § 610 of the Federal Election Campaign Act of 1971 did not create a right in favor of the plaintiff, as a member of the general public).

NRS § 197.200 is not the type of criminal statute contemplated within this narrowly created exception. See, e.g., *Cort*, 422 U.S. at 78–82, 95 S.Ct. at 2088–90; *J.I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) (a private action permitted for violation of a section of the Securities Exchange Act of 1934 for a private stockholder); *Texas and Pacific Railway Co. v. Rigsby*, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874 (1916) (plaintiff employee allowed to maintain private action under Federal Safety Appliance Act because he was a member of the class that the Act was designed to protect). NRS § 197.200 provides protection to the general population of Nevada against the oppressive, injurious or confiscatory actions of state officers, or those pretending to be such, who act under the color of state authority. Section 197.200 does not mention any particular class of citizen. Thus, § 197.200 is strictly criminal in nature and possess no civil implications.

Furthermore, only proper prosecuting authorities may enforce violations of criminal statutes, not private parties. *Bass Angler Sportsman Soc. v. Scholze Tannery, Inc.*, 329 F.Supp. 339, 345 (E.D.Tenn.1971). Indeed, NRS § 169.055, which defines a "criminal action," states that "[a] criminal action is prosecuted in the name of the State of Nevada, as plaintiff." Plaintiff also lacks standing to contest the prosecution or non-prosecution of Defendants because "he himself is neither prosecuted nor threatened with prosecution" under NRS § 197.200. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973), *citing Younger v. Harris*, 401 U.S. 37, 42, 91 S.Ct. 746, 748, 27 L.Ed.2d 669 (1971); *Bailey v. Patterson*, 369 U.S. 31, 33, 82 S.Ct. 549, 550, 7 L.Ed.2d 512 (1962); *Poe v. Ullman*, 367 U.S. 497, 501, 81 S.Ct. 1752, 1754, 6 L.Ed.2d 989 (1961). Thus, Plaintiff's action cannot be maintained based upon the fact that he is a private party attempting to enforce a strictly criminal statute.

## CONCLUSION

Fed.R.Civ.P. 12(b) expressly grants this Court discretion to exclude consideration of matters outside the pleadings on a motion to dismiss. Because the exhibits attached to Plaintiff's opposition contributed nothing to the disposition of the case, we did not consider any extraneous materials contained in, or attached to, Plaintiff's reply when deciding Defendants' Motion to Dismiss.

Viewing the Amended Complaint's statement of facts in the most favorable light, Plaintiff fails to alleged facts that under any circumstances would entitle him to relief under 42 U.S.C. § 1983. Plaintiff failed to identify any property or liberty interest arising from the Constitution, Nevada state law or prison regulations that would implicate the Due Process or Equal Protection Clauses. Thus, this Court did not, and need not, scrutinize what procedures Defendants used when they discharged Plaintiff from his PI work assignment.

Lastly, Plaintiff cannot seek to enforce a Nevada criminal statute in a private civil action.

**IT IS, THEREFORE, HEREBY ORDERED** that Defendants' Motion to Strike (document # 19) is **GRANTED.**

IT IS FURTHER ORDERED that because prison employment does not give Plaintiff a property or liberty interest protected by the Due Process or Equal Protection Clauses, this Court shall *sua sponte* **DISMISS** Counts One through Four.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss (document # 17), solely with respect to Count Five, is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff shall have 15 days within which to file an amended complaint addressing the deficiencies set forth in this order; and if he does not do so, the action shall be **DISMISSED WITHOUT PREJUDICE.**