Tarris L. WOODS

v.

**CITY OF GALVESTON and Firefighters Relief and Retirement Fund.**

No. CIV. A. G–97–517.

United States District Court,
S.D. Texas,
Galveston Division.

May 21, 1998.

Larry V. Green, Larry V. Green and Associates, Houston, TX, for Taris L. Woods, plaintiff.

Taris L. Woods, Galveston, TX, pro se.

David Elias Cowen, McLeod Alexander Powel & Apffel, Galveston, TX, for Fire Fighters Relief and Retirement Fund, defendant.

John Edward Eckel, Mills Shirley Eckel & Bassett, Galveston, TX, for City of Galveston, defendant.

### ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

KENT, District Judge.

Plaintiff, an African–American male and former employee of the City of Galveston, brings this case against the City of Galveston (the "City") and the Fire Fighters Relief and Retirement Fund (the "FRRF"), alleging dis-

crimination in violation of 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the Americans with Disabilities Act ("ADA"); 42 U.S.C. § 12101 *et seq.*, retaliation and discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, intentional infliction of emotional distress, common-law fraud, and violation of section 21.002 of the Texas Labor Code. Now before the Court are Defendants' Motions for Summary Judgment. For the reasons that follow, both Motions are hereby **GRANTED.** Consequently, all of Plaintiff's claims are hereby **DISMISSED WITH PREJUDICE.**

## I. FACTUAL SUMMARY

Plaintiff began employment with the Galveston Fire Department on February 23, 1981. At the time of his appointment to the Fire Department, Plaintiff applied for and was granted membership in the FRRF, a separate legal entity which provides benefits for retired and disabled firefighters.[1] In June, 1987, after complaining of work-related stress and what he alleges to be a paranoid disorder arising from racial comments made by white coworkers, Plaintiff was placed on disability and began receiving benefits from the FRRF. In November 1987, Plaintiff filed a Title VII charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). In March of 1988, Plaintiff requested disability retirement from the City, and thereafter signed an exit interview form stating his official date of separation for the City as March 25, 1988. In September 1988, Plaintiff filed a discrimination suit in state court against both the City and the FRRF; that case was fully settled in 1993.[2] In 1996, the FRRF determined that Plaintiff was no

longer disabled and therefore terminated Plaintiff's disability benefits on December 23, 1996. Plaintiff appealed his termination to the Firefighter's Pension Commission, where the administrative law judge upheld the denial of benefits. Plaintiff's subsequent exceptions to the decision and request for a new hearing were denied. Thereafter, Plaintiff filed another Charge with the EEOC. After receiving a Right to Sue Letter, he filed suit in this Court against the City and the FRRF.

## II. SUMMARY JUDGMENT STANDARD

■ Both the City and the FRRF separately seek summary judgment. The FRRF styles its Motion as one to dismiss and for summary judgment. No matter what the style, a motion seeking judgment as a matter of law with supporting evidence is examined pursuant to FED. R. CIV. P. 56. *See* FED. R. CIV. P. 12(b)(6).[3]

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* 477 U.S. at 248, 106 S.Ct. at 2510. The mere *existence* of some alleged factual

1. The FRRF is now called the Texas Local Firefighter's Retirement Act. *See* TEX. REV. CIV. STAT. ANN. art. 6243e.

2. In addition to the EEOC charge that formed the basis of his state court suit, Plaintiff had previously filed a charge with the EEOC. From the sketchy evidence presented, it appears that the subsequent EEOC charge was one claiming retaliation for filing the first Charge.

3. A motion to dismiss may be treated as motion for summary judgment where the conversion of the motion facilitates the disposition of the case. *See, e.g., Collins v. Palczewski*, 841 F.Supp. 333 (D.C.Nev.1993); *see also* 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL

PRACTICE & PROCEDURE § 1366 (1990 and Supp.1996). On a motion to dismiss, the Court has discretion as to whether it will accept materials outside the pleadings. *See Skyberg v. United Food and Commercial Workers Int'l Union*, 5 F.3d 297, 302 (8th Cir.1993). Matters outside the pleadings include written or oral evidence substantiating, not reiterating, the contents of the pleadings. *See Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir.1992). If the Court accepts outside information, it must convert the motion to dismiss to a motion for summary judgment. *See Madewell v. Downs*, 68 F.3d 1030 (8th Cir.1995). Upon conversion, the Court applies the standard for summary judgment. *See Woods v. Dugan*, 660 F.2d 379, 381 (8th Cir.1981).

dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* 477 U.S. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Casualty Co.,* 799 F.Supp. 691 (S.D.Tex.1992)(noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

### III. PLAINTIFF'S ABANDONED CLAIMS

At the outset, the Court notes that Plaintiff's allegations up to this point are mutually exclusive and fatally conflicting. Against the City, Plaintiff claims that he was not reinstated because of his race. Against the FRRF, he claims he was not allowed to continue on disability because of his race. Obviously, if Plaintiff is disabled, then he is not eligible for reinstatement by the City, and consideration of race is irrelevant. Conversely, if he is physically eligible for reinstatement, he cannot therefore be disabled, and any claim for continued benefits is per se insupportable.

As noted above, Plaintiff brought this case alleging discrimination in violation of 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the ADA, 42 U.S.C. § 12101 *et seq.,* retaliation and discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.,* intentional infliction of emotional distress, common-law fraud, and violations of section 21.002 of the Texas Labor Code. In his Response, and after a protracted procedural history, Plaintiff now informs the Court that he only intends to pursue his claims for violation of 42 U.S.C. § 1981. In the first instance, the Court notes that Plaintiff's abandoned claims, for various legal reasons, completely lack any basis in fact and law. Obviously Plaintiff concedes such, and because Plaintiff fails to pursue these claims at this juncture, they are forever barred by the applicable statutes of limitation. Consequently, each and all of Plaintiff's claims alleging discrimination in violation of 42 U.S.C. § 1983 and the ADA, 42 U.S.C. § 1201 *et seq.,* retaliation and discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.,* intentional infliction of emotional distress, common-law fraud, and violations of section 21.002 of the Texas Labor Code are hereby **DISMISSED WITH PREJUDICE.**[4]

### IV. MCDONNELL DOUGLAS/BURDINE FRAMEWORK

Having now abandoned his antithetical disability claims, Plaintiff solely alleges he was discriminated against because of his race. Section 1981 prohibits racial discrimination in the making and enforcement of contracts. *See* 42 U.S.C. § 1981(b) ("[T]he term 'make and enforce contracts' includes the termination of contracts."). Section 1981 applies to contractual relationships in the employment setting and "is designed to include a federal remedy against discrimination in employment on the basis of race." *Adams v. McDougal,* 695 F.2d 104, 108 (5th Cir.1983). In order to state a cause of action for racial discrimination in the making and enforcement of contracts under § 1981, Plaintiff must demonstrate intentional discrimination. *See General Bldg. Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982); *National Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio,* 40 F.3d 698, 714 (5th Cir.1994). The Fifth Circuit applies the now familiar burden shifting analytical framework first established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to analyze

---

4. Moreover, the Court specifically notes that claims brought pursuant to the ADA, 21.001 of the Texas Labor Code, and Title VII must be brought against one's employer. It is clear that the FRRF was not Plaintiff's employer and that such claims are so utterly devoid of merit as to invite Rule 11 sanctions.

claims under § 1981. *See, e.g., Armstrong v. City of Dallas,* 997 F.2d 62, 65 n. 2 (5th Cir.1993).[5]

■ Under the *McDonnell Douglas/Burdine* framework, the Court employs a three-part test designed to determine the Defendants' motivation in taking the challenged action. *See McDonnell Douglas,* 411 U.S. at 803–04, 93 S.Ct. at 1824–25; *Burdine,* 450 U.S. at 252–54, 101 S.Ct. at 1093–94. First, Plaintiff is required to establish a *prima facie* case, wherein he must establish the elements of the discrimination claim. If Plaintiff proves his *prima facie* case, a presumption of discrimination arises. *See Bodenheimer v. PPG Industries, Inc.,* 5 F.3d 955, 957 (5th Cir.1993). The burden of production then shifts to Defendants to rebut this presumption by articulating legitimate, nondiscriminatory reasons for the alleged discriminatory actions. *See Olitsky v. Spencer Gifts, Inc.,* 964 F.2d 1471, 1478 n. 19 (5th Cir.1992). Defendants meet this burden by proffering admissible evidence of an explanation that would be legally sufficient to justify a judgment for Defendants. *See Guthrie v. Tifco Indus.,* 941 F.2d 374, 376 (5th Cir. 1991). Defendants need not persuade the trier of fact that there was no intentional discrimination; they need only produce evidence on that point. *See Hicks,* 509 U.S. at 507–08, 113 S.Ct. at 2747–48. Third, once Defendants satisfy this burden, the presumption of discrimination established by Plaintiff's *prima facie* case dissolves. *See Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10. Plaintiff's burden of persuasion then arises, and he must produce evidence that Defendants' proffered reasons are mere pretexts, the real reason for the action having been based on an impermissible *animus. See id.* 450 U.S. at 256, 101 S.Ct. at 1095;

*Bodenheimer,* 5 F.3d at 959. Plaintiff may succeed at this juncture, either by persuading the Court that a discriminatory reason more likely motivated Defendants, or by showing that Defendants' proffered reasons are unworthy of credence. *See Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. The ultimate burden of proof of intentional discrimination rests at all times with Plaintiff. *See Hicks,* 509 U.S. at 507, 113 S.Ct. at 2749.

■ Summary judgment is particularly appropriate when the Court is evaluating evidence at the "pretext" stage of the *McDonnell Douglas* analysis.

> "[I]t is relatively easy both for a plaintiff to establish a *prima facie* case and for a defendant to articulate a legitimate, nondiscriminatory reason for his decision." ... In the context of summary judgment ..., the question is not whether the plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext.

*Britt v. The Grocers Supply Co.,* 978 F.2d 1441, 1450 (5th Cir.1992)(quoting *Amburgey v. Corhart Refractories Corp.,* 936 F.2d 805, 811 (5th Cir.1991) (citations omitted)). Speculation and belief are insufficient to create a fact issue as to pretext. *See Britt,* 978 F.2d at 1451. Nor can pretext be established by mere conclusory statements of the plaintiff. *See E.E.O.C v. Exxon Shipping Co.,* 745 F.2d 967, 976 (5th Cir.1984).[6]

## V. PLAINTIFF'S CLAIMS AGAINST THE CITY

### A. Res Judicata

■ On September 8, 1988, Plaintiff filed a discrimination lawsuit in state court against the City. On January 17, 1991, the state court granted partial summary judg-

---

**5.** *McDonnell Douglas* was refined in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and was further clarified in *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

**6.** For whatever reason, and although he argues at length about retaliation in his Response, Plaintiff has abandoned his Title VII claims. Even so, liability for discrimination or retaliation under Title VII requires the same legal analysis as a claim under § 1981. *See Patterson v. McLean*

*Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 2377, 105 L.Ed.2d 132 (1989); *see also Ramirez v. Sloss,* 615 F.2d 163, 168 (5th Cir.1980)(declaring that in the Fifth Circuit, a plaintiff pursuing a § 1981 claim must establish intentional discrimination); *Williams v. Dekalb County,* 582 F.2d 2, 2–3 (5th Cir.1978)(same). As will be demonstrated, Plaintiff's § 1981 claims do not survive the *McDonnell Douglas/Burdine* analysis. Therefore, his Title VII claims, even if not abandoned, would likewise fail.

ment on the City's behalf, stating that, as a matter of law, no discriminatory actions taken by the City against Plaintiff prior to June 30, 1987 were actionable. Thereafter, Plaintiff amended his state court petition, alleging various discriminatory actions taken by the City during March 1988. On June 28, 1993, both parties announced on the record that the case was settled, and a take nothing judgment was entered by the state court. The City argues that the state court judgment precludes Plaintiff's claims in this case.

■■■■■ Under the doctrine of res judicata, also called claim preclusion, a final judgment on the merits in a prior suit bars a second suit based on the same claim involving the same parties or persons in privity with those parties. See Barr v. Resolution Trust Corp., 837 S.W.2d 627, 628 (Tex.1992); see also RESTATEMENT (SECOND) OF JUDGMENTS § 27. To take advantage of the preclusive effect of res judicata, the City must show that: (1) there is a prior final judgment on the merits from a court of competent jurisdiction; (2) that there is identity of the parties (or privity); and (3) that the second action is based on the same claims as were, or could have been, raised in the first action. See Kaspar Wire Works, Inc. v. Leco Engineering & Machinery, Inc., 575 F.2d 530, 535 (5th Cir.1978); see also Amstadt v. Brass Corp., 919 S.W.2d 644 (Tex.1996). Modern interpretations of res judicata give the doctrine a broad preclusive effect to include legal theories and rights to remedies that spring from the transaction giving rise to an injury or wrong. See, e.g., Jones v. Nightingale, 900 S.W.2d 87, 89 (Tex.App.— San Antonio 1995, writ ref'd n.r.e.)(declaring that res judicata bars litigation of all issues connected with a cause of action or defense which might have been tried in the prior suit); see also RESTATEMENT (SECOND) OF JUDGMENTS § 24.

Plaintiff does not dispute that the first and second requirements of res judicata are present in the instant case. Plaintiff, instead, contends that res judicata is inapplicable because the issues resolved in the first action differ from those asserted here. In essence, Plaintiff alleges that the City violated § 1981 when they failed to instruct him regarding reinstatement procedures and failed to reinstate him following termination of his disability benefits. Plaintiff further argues that he could not have brought this claim, because at the time of the first lawsuit, he did not know he had been officially terminated, and therefore could not have known that the City had failed to instruct him on reinstatement procedures, nor could he have known that the City failed to reinstate him due to his race. The City, on the other hand, argues that Plaintiff was officially terminated on March 25, 1988. It further contends, therefore, that Plaintiff could have brought his claims asserted here in the prior state court suit.

This Court finds both arguments unpersuasive. According to the summary judgment evidence presented, it is clear that Plaintiff was informed of his termination from City employment, effective March 1988. After his termination, he began to receive FRRF benefits. However, simply because Plaintiff knew he was no longer an employee of the City does not mean he was aware of his failure to be reinstated. Reinstatement was a nonissue, up and until the time Plaintiff's disability benefits ended. Plaintiff's disability benefits were terminated on December 23, 1996. At that time, Plaintiff sought but was denied reinstatement. Thus, at the time of the original 1988 lawsuit and its 1992 amendment, Plaintiff simply could not have brought the claim for failure to reinstate which he asserts here. Plaintiff's situation is akin to that of any individual who alleges he was denied employment due to his race—the cause of action does not mature until the individual actually takes steps to secure the job. The Court notes, however, that to the extent Plaintiff seeks relief for discriminatory actions occurring before January 22, 1992, the date of his last state court petition amendment, those actions are precluded by res judicata.

## B. Administrative Remedies

■■■■■ It is axiomatic that administrative review is required before judicial review of a discrimination complaint. See Gottlieb v. Tulane Univ., 809 F.2d 278, 284 n. 8 (5th Cir.1987). To sustain a § 1981 claim in Texas, a plaintiff must file his charge of discrimi-

nation with the EEOC within 300 days of the "alleged unlawful employment practice." *See* 42 U.S.C. § 1981. In his 1997 Charge of Discrimination filed with the EEOC, Plaintiff fails to mention the City. Indeed, the Charge instead involves the circumstances surrounding Plaintiff's removal from disability and makes no reference to the City's failure to reinstate him. Moreover, the Right to Sue letter issued by the EEOC in this case makes clear that Plaintiff only received administrative review of his allegations against the FRRF, a separate legal entity from the City. Therefore, because Plaintiff failed to exhaust his administrative remedy, his § 1981 claim against the City must be dismissed.

### C. McDonnell Douglas Analysis

 Even if Plaintiff had satisfied administrative requirements, his § 1981 claim fails because it cannot survive the *McDonnell Douglas/Burdine* analysis. The crux of Plaintiff's case against the City is that even though a similarly situated white male, Kenny Coleman, was reinstated following disability, Plaintiff was not because he is African American. To establish a *prima facie* case of intentional discrimination under § 1981, Plaintiff must show: (1) that he belongs to a racial minority; (2) that he applied for and was qualified for the position for which he sought reinstatement; (3) that he was rejected despite his qualifications; and (4) that the position remained open, and the employer continued to seek applications from persons of Plaintiff's qualifications. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. Texas law requires a former firefighter whose disability benefits have been terminated to receive approval from the Civil Service Commission before he can be reinstated. *See* TEX. LOC. GOV'T CODE ANN. § 143.074. Prior to filing this suit in 1997, Plaintiff did not request, and therefore did not receive, a hearing before the Commis-

sion. Plaintiff therefore was not "qualified" for the position sought, and thus fails even to establish a *prima facie* case.[7]

 Even assuming for the moment that Plaintiff has established a *prima facie* case against the City, which he has not, the Court finds the City's proffered reasons for its failure to rehire him (that he was not eligible for rehire) to be legitimate and nondiscriminatory. Accordingly, *McDonnell Douglas'* burden-shifting structure becomes irrelevant to Plaintiff's claims, and the inference of unlawful discrimination created by Plaintiff's *prima facie* evidence disappears. *See Burdine*, 450 U.S. at 255 n. 10, 101 S.Ct. at 1095.

 Having found that the City has provided a legitimate, nondiscriminatory reason for its conduct, the Court now turns to the issue of pretext. A plaintiff alleging employment discrimination need not come forward with direct evidence of discriminatory intent in order to avoid summary judgment. *See La Pierre*, 86 F.3d at 449; *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir.1996)(en banc). Such direct evidence of an employer's discriminatory intent is rare; therefore, Title VII plaintiffs ordinarily must prove their claims through circumstantial evidence. A plaintiff establishes this circumstantial evidence of intentional discrimination by demonstrating that the defendant's articulated nondiscriminatory rationale is pretextual. *See McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825; *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. Indeed, "[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the *prima facie* case, suffice to show intentional discrimination." *Hicks*, 509 U.S. at 511, 113 S.Ct. at 2749.

Other than the assertion that a similarly situated white male was reinstated but he

---

7. Mr. Coleman, on the other hand, followed proper procedure; therefore, Coleman and Plaintiff were not similarly situated. The Court is aware that at least part of Plaintiff's complaint is that he was not informed of the proper procedures for reinstatement, while a white male was so informed. Even if the Court believed that this assertion rises to that level actionable under

§ 1981, which it does not, after an exhaustive review of the summary judgment evidence, the Court finds absolutely nothing to support this contention. Furthermore, the comprehensive knowledge of Texas law evidenced in his letter of retirement induces this Court to seriously question Plaintiff's claims of ignorance.

was not, Plaintiff offers absolutely no evidence, except for his personal beliefs, that support his assertions of racial discrimination. Similarly, an exhaustive review of the summary judgment evidence reveals that the only evidence supporting *any* of Plaintiff's claims is his personal beliefs. "Speculation and belief are insufficient to create a fact issue as to pretext." *McKey v. Occidental Chem. Corp.*, 956 F.Supp. 1313, 1319 (S.D.Tex.1997)(Kent, J.). Moreover, conclusory statements, as offered here by Plaintiff, simply do not suffice. *Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir.1996)("In short, conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden.... It is more than well-settled that an employee's subjective belief that he suffered as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason.")(en banc); *see also Ray,* 63 F.3d at 434 (stating that "bald assertions of age discrimination are inadequate to permit a finding that proscribed discrimination motivated [Defendants'] actions against [Plaintiff]"). Although the burden rests here with Plaintiff, he fails to persuade the Court that a discriminatory reason more likely motivated the City or that the City's proffered reasons are unworthy of credence. *See Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. Thus, because he failed to satisfy the administrative review requirement, and because he fails to establish a *prima facie* case or to show pretext, Plaintiff's claim must fail. Consequently, Plaintiff's § 1981 claim asserted against the City is hereby **DISMISSED WITH PREJUDICE.**

## VI. PLAINTIFF'S CLAIMS AGAINST THE FRRF

Plaintiff contends in his Response that Defendant FRRF violated § 1981 because it subjected him to harassing and repeated requests for medical examinations prior to terminating his benefits. Plaintiff asserts further that a white male, Kenny Coleman, was not treated in the same manner. Moreover, Plaintiff alleges that his disability benefits were illegally terminated, partly because he is an African American. Like Plaintiff's claims against the City, his claims against the FRRF fail for several reasons.

### A. Collateral Estoppel

After repeated requests over a four-year period to submit to examination by an independent physician, Plaintiff was finally examined by Dr. Charles Covert. Dr. Covert noted that Plaintiff showed no indication that he had received any psychiatric or psychological treatment for the previous six years for which he received disability payments. Dr. Covert concluded that Plaintiff was malingering and that he was neither physically nor mentally disabled. Dr. Covert further determined that gainful employment would actually serve to structure Plaintiff's time and improve his self esteem. Based on Dr. Covert's recommendations, and the recommendations by other medical examiners, Plaintiff's disability benefits were terminated in a public meeting, which Plaintiff did not attend.

It is undisputed that Plaintiff appealed his denial of disability benefits. Under the Texas Administrative Procedure and Texas Registration Act, Tex. Gov't Code Ann. §§ 2001.001–2001.902, after a disability recipient's benefits are denied by the Commissioner, the recipient is entitled to a hearing before an administrative law judge ("ALJ") with the State Office of Administrative Hearings. Plaintiff received such a hearing. He was represented by counsel, was entitled to present live and deposition witnesses, cross examine opposition witnesses, and conduct discovery. He was also entitled to have a trial, object to any evidence presented, and present expert testimony. During the administrative proceedings, Plaintiff *could have* raised any issue pertinent to his disability status. Moreover, it is clear that Plaintiff's disability status was fully considered in the proceedings.

After completing the fact finding process, the ALJ ruled that Plaintiff was not disabled. The ALJ also found that Plaintiff was malingering and was therefore no longer entitled to disability benefits. As stated above, the preclusive effect of res judicata

and collateral estoppel are interpreted broadly. This Court must give an agency's fact finding the same preclusive effect that they would a decision of a state court, when the state agency is acting in a judicial capacity and gives the parties a fair opportunity to litigate. *See University of Tennessee v. Elliott,* 478 U.S. 788, 799, 106 S.Ct. 3220, 3226, 92 L.Ed.2d 635 (1986). Because the ALJ necessarily determined that Plaintiff was not denied benefits due to race, but was instead had his benefits terminated because he was malingering, Plaintiff is precluded from bringing his § 1981 claim here. *See, e.g., Stafford v. True Temper Sports,* 123 F.3d 291, 294 (5th Cir.1997)(holding that a denial of unemployment benefits by an administrative body precluded plaintiff's discriminatory firing allegation).

### B. McDonnell Douglas Analysis

■ Like Plaintiff's claim against the City, his § 1981 claim against the FRRF also fails because he cannot overcome the rigors of the *McDonnell Douglas/Burdine* framework. Again, it is clear that the "white male," to which Plaintiff continuously refers, was not similarly situated; thus, Plaintiff fails to establish a *prima facie* case.[8] Moreover, it is clear that Plaintiff's FRRF benefits ended not because of his race, but instead were terminated because the ALJ found that Plaintiff failed to provide the required information and was malingering.[9] Other than conclusory statements of his own personal beliefs, Plaintiff offers absolutely no credible summary judgment evidence to the contrary. Consequently, Plaintiff's § 1981 claim against Defendant FRRF is hereby **DISMISSED WITH PREJUDICE.**

### VII. CONCLUSION

The Court understands the pain and resentment that results when one feels he is the object of discrimination. This Court is, however, bound by the law. Unfortunately for Plaintiff, his claims simply are not actionable in a court of law. In an almost unprecedented move, Plaintiff's counsel asks this Court to deny summary judgment in this matter because Plaintiff originally proceeded *pro se.* This the Court will not do. Although the Court empathizes with *pro se* parties and attempts to aid them where appropriate, the bottom line is that they proceed at their own peril. Moreover, whether a party is represented by counsel has no bearing upon whether the party has a case with merit.

For the reasons set forth above, the both Motions for Summary Judgment are **GRANTED** and all of Plaintiff's claims asserted against all Defendants in this action are hereby **DISMISSED WITH PREJUDICE.** The parties are **ORDERED** to bear their own taxable costs, attorneys' fees, and expenses incurred herein to date. The parties are further **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider or the like, unless justified by a compelling showing of new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**

---

8. Indeed, two other recipients of disability benefits were required to undergo evaluation at the same time as Plaintiff. One of these two, a white male, had his benefits terminated. The other, a black male, was continued on disability following the evaluation.

9. Plaintiff also contends that he was harassed by the FRRF and was repeatedly subjected to medical examinations. By law, the FRRF is entitled to require a recipient to submit to medical examinations. *See* TEX. REV. CIV. STAT. ANN. art. 6243e § 14(f)(2). Plaintiff, however, refused on several occasions to provide the required medical information. Given the ultimate determination of the ALJ, it is apparent that the FRRF was wise in its continuing examination of Plaintiff's condition. Moreover, Plaintiff offers absolutely no evidence that he was treated any differently than any other similarly situated beneficiary.